## 20973

The STATE, Respondent, v. Joseph Carl SHAW and James Terry Roach, Appellants.

(255 S. E. (2d) 799)

*Kermit S. King, Dallas D. Ball,* and *W. Thomas Vernon,* of *Lewis, Lewis & Robinson,* Columbia, *for appellant Shaw.*

*Walter W. Brooks, John A. Mason, Barry B. George* and *John K. Grisso,* Columbia and *O. Grady Query,* Charleston, *for appellant Roach.*

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Brian P. Gibbes* and *Sol. James C. Anders,* Columbia, *for respondent.*

May 28, 1979.

GREGORY, Justice:

Appellants Joseph Carl Shaw and James Terry Roach pled guilty to the murders of Thomas Taylor and Carlotta Hartness and each was sentenced to death. The case is before this Court on direct appeal and for mandatory review of the death sentences.

This is the first capital case reviewed under our current death penalty statutes, Section 16-3-20 through Section 16-3-28, 1976 Code of Laws of South Carolina, Cum. Supp. 1978.

## FACTUAL SETTING

Shaw, Roach, and Ronald Eugene Mahaffey spent the morning of Saturday, October 29, 1977, "shooting up" with drugs and drinking beer. At approximately 1:00 that afternoon the three decided, in Mahaffey's words, "to see if we could find a girl to rape."

Shaw, Roach, and Mahaffey drove to Polo Park, a baseball park, located off Alpine Road northeast of Columbia. There they saw a parked late model car occupied by Thomas Taylor, aged 17, and Carlotta Hartness, aged 14.

Shaw, who was driving, pulled up beside the parked car in such a way that Roach, who was in the front passenger's seat, was directly across from Taylor, the driver of the parked car. Mahaffey was in the back seat.

At a prearranged signal from Shaw, Roach leveled a .22 caliber rifle through the car window at Taylor and demanded money. Taylor gave the three his wallet.

Shaw and Mahaffey got out of their car and Mahaffey took the keys out of Taylor's car. Shaw ordered Ms. Hartness out of Taylor's car and forced her into the back seat

of his car with Mahaffey. Shaw got back into his car, turned to Roach and said, "Ok, now." Roach then shot and killed young Taylor who was still sitting in his parked car.

Ms. Hartness was carried to a dirt road a short distance away where she was forced to disrobe. Shaw raped Ms. Hartness while Roach and Mahaffey looked through Taylor's wallet. Roach then raped Ms. Hartness. Shaw raped Ms. Hartness a second time while Mahaffey forced her to perform oral sex. Mahaffey then raped Ms. Hartness while Shaw forced her to perform oral sex.

Shaw asked who would shoot Ms. Hartness and Roach volunteered. Shaw instructed Ms. Hartness to put her face to the ground but she refused. Shaw drew a circle in the dirt and drew an "X" inside the circle and told Ms. Hartness to place her head in the circle. Ms. Hartness again refused and pleaded for her life. Shaw told Ms. Hartness a third time to place her head on the ground and she complied. Roach shot Ms. Hartness in the head, causing her body to convulse. Shaw then took the rifle from Roach and fired into Ms. Hartness's head, killing her.

Shaw, Roach, and Mahaffey left the scene, disposed of the rifle and bullets, and returned to Polo Park to satisfy themselves that Taylor was dead.

Later that night Shaw returned to the scene of Ms. Hartness's murder and mutilated her body by cutting her breasts and pubic area with broken glass and by inserting sticks in her vagina and anus.

Shaw, Roach, and Mahaffey were arrested on November 3, 1977. Each was indicted for two counts of murder, two counts of conspiracy, rape, kidnapping, and armed robbery. The State elected to seek the death penalty for Shaw and Roach and served the Notices required by Section 16-3-20 (B) and Section 16-3-26(A), Cum. Supp. 1978.

As the result of plea negotiations the State did not seek the death penalty against Mahaffey in exchange for his testimony against Shaw and Roach.

On December 12, 1977 Shaw pled guilty to all charges. Roach pled guilty to two counts of murder, rape, kidnapping and armed robbery, and pled *nolo contendere* to two counts of conspiracy.

A separate pre-sentence hearing was conducted as required by Section 16-3-20(B), Cum. Supp. 1978, on December 14, 15 and 16, 1977. At this hearing evidence in extenuation, mitigation and aggravation was introduced. The trial judge found aggravating circumstances and imposed sentences of death upon both Shaw and Roach.

## GUILT DETERMINATION

No issue is raised on appeal regarding the validity of appellants' guilty pleas. We have reviewed the record, however, and are satisfied the guilty pleas were properly taken. The able trial judge went the second mile to insure that the guilty pleas were given knowingly and voluntarily.

## CONSTITUTIONAL CHALLENGES TO THE STATUTORY COMPLEX

Our present death penalty statutes, Section 16-3-20 through Section 16-3-28, Cum. Supp. 1978, were enacted as Act No. 177 of the 1977 Acts of the General Assembly. Act No. 177 of 1977 was patterned after the death penalty statutes of our sister state Georgia.

The constitutionality of Georgia's death penalty statutes was considered by the United States Supreme Court in *Gregg v. Georgia,* 428 U. S. 153, 96 S. Ct. 2909, 49 L. Ed. (2d) 859 (1976). While opinions may differ as to the parameters of the Supreme Court's holding in *Gregg,* it is indisputable that in *Gregg* the Court approved Georgia's death penalty statutes.

We now consider whether this State's statutory death penalty procedure is sufficiently similar to Georgia's procedure to pass constitutional scrutiny.

South Carolina's statutory complex, which is found at Appendix A to this opinion, retains the death penalty only for the crime of murder.[1] A capital defendant's guilt or innocence is determined in the traditional manner, either by a judge or jury, in the first stage of a bifurcated trial.

Upon conviction or adjudication of guilt of a capital defendant of murder, a separate sentencing proceeding is conducted to determine whether the capital defendant shall be sentenced to death or life imprisonment. The sentencing proceeding is conducted before the trial jury, or if the capital defendant pled guilty or if the trial jury is waived by both the capital defendant and the State, the sentencing proceeding is conducted before the court. Section 16-3-20(B), Cum. Supp. 1978.

"In the sentencing proceeding, the [trial] jury or judge shall hear additional evidence in extenuation, mitigation or aggravation of the punishment. Only such evidence in aggravation as the State has made known to the defendant in writing prior to the trial shall be admissible." Section 16-3-20(B), Cum. Supp. 1978. No similar limitation is imposed on evidence introduced in extenuation or mitigation of punishment by the capital defendant.

The capital defendant and his counsel are entitled to the closing argument regarding the sentence imposed.

In the assessment of the appropriate sentence to be imposed the judge is required to consider or include in his instructions to the trial jury for it to consider "any mitigating circumstances otherwise authorized or allowed by law and any of . . . [seven (7) statutory] aggravating and [nine (9) statutory] mitigating circumstances which may be supported by the evidence." Section 16-3-20(C), Cum. Supp. 1978. Although the statutory complex does not delineate the scope of non-statutory mitigating circumstances,

---

1 Section 16-3-10, 1976 Code, provides: " 'Murder' is the killing of any person with malice aforethought, either express or implied."

it makes no provision for the consideration by the sentencing authority of any non-statutory aggravating circumstances.

Before a convicted capital defendant may be sentenced to death, the sentencing authority must find at least one aggravating circumstance beyond a reasonable doubt. The sentencing authority must designate in writing the aggravating circumstance or circumstances which it found. If the sentencing authority is the trial jury, this written finding must be signed by all members of the jury. The trial jury may recommend the death penalty only by unanimous decision. Section 16-3-20(C), Cum. Supp. 1978.

The sentencing authority is not required by the statutory complex to find any mitigating circumstance in order to impose life imprisonment.

When the trial jury is the sentencing authority, its recommendation for punishment is binding on the court.

Regardless of whether the sentencing authority is the court or the trial jury, the court, prior to imposing the death penalty, is required to find as an affirmative fact that the death penalty is warranted under the evidence and is not imposed as the result of prejudice, passion, or any other arbitrary factor.[2] Section 16-3-20(C), Cum. Supp. 1978.

Whenever the death penalty is imposed, the entire record and transcript of the trial, together with a separate report by the trial judge, are transmitted to this Court for sentence review. The report of the trial judge is in the form of a questionnaire prepared and supplied by this Court. Section 16-3-25(A), Cum. Supp. 1978. The eleven page questionnaire is designed to elicit detailed information about the defendant, the crime, and the circumstances of the trial.

Upon reviewing the sentence, this Court is authorized to affirm the death penalty or set the sentence aside and re-

---

[2] We recognize, but need not resolve, the dilemma that would face the trial judge who is unable to find as an affirmative fact that the jury's recommendation of the death penalty is not the product of passion, prejudice or any other arbitrary factor.

mand for resentencing. Section 16-3-25(E), Cum. Supp. 1978.

The mandatory sentence review is in addition to, but may be consolidated with, any direct appeal by the convicted capital defendant. Section 16-3-25(F), Cum. Supp. 1978.

Mr. Justice Stewart, speaking for the Court in *Gregg,* summarized the procedural conditions necessary to impose the death penalty:

In summary, the concerns expressed in *Furman* [*v. Georgia,* 408 U. S. 238, 92 S. Ct. 2726, 33 L. Ed. (2d) 346 (1972)] that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance. As a general proposition these concerns are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information. 428 U. S. at 195, 96 S. Ct. at 2935, 49 L. Ed. (2d) at 887.

Commenting on *Gregg, supra,* Chief Justice Burger, joined by Justices Stewart, Powell and Stevens, stated in *Lockett v. Ohio,* 438 U. S. 586, 98 S. Ct. 2954, 57 L. Ed. (2d) 973 (1978):

The plurality [in *Gregg*] reasoned that to comply with *Furman,* sentencing procedures should not create "a substantial risk that the [death penalty will] be inflicted in an arbitrary and capricious manner." *Gregg v. Georgia, supra,* 428 U. S. at 188, 96 S. Ct. [2909], at 2932 [49 L. Ed. (2d) 859]. In view of the plurality, however, *Furman* did not require that all sentencing discretion be eliminated, but only that it be "directed and limited," *id.,* at 189, 96 S. Ct. [2909], at 2932 [49 L. Ed. (2d) 859], so that the death penalty would be imposed in a more consistent and rational manner and so that there would be a "meaningful basis for

distinguishing the . . . cases in which it is imposed from . . . the many cases in which it is not." *Id,* at 188, 96 S. Ct. [2909], at 2932 [49 L. Ed. (2d) 859]. The plurality also concluded, in the course of invalidating North Carolina's mandatory death penalty statute, that the sentencing process must permit consideration of the "character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina supra,* 428 U. S. [280] at 304, 96 S. Ct. [2978] at 2991 [49 L. Ed. (2d) 944], in order to ensure the reliability, under Eighth Amendment standards, of the determination that "death is the appropriate punishment in a specific case." *Id.,* at 305, 96 S. Ct. [2978], at 2991 [49 Ed. (2d) 944] ; see *Roberts (Harry) v. Louisiana,* 431 U. S. 633, 637, 97 S. Ct. 1993, 1996, 52 L. Ed. (2d) 637 [5 Ohio Ops. (2d) 252] (1977) ; *Jurek v. Texas,* 428 U. S. 262, 271-272, 96 S. Ct. 2950, 2956, 49 L. Ed. (2d) 929 (1976). 438 U. S. at 601, 98 S. Ct. at 2963, 57 L. Ed. (2d) at 987-988.

The statutory death penalty complex adopted by the General Assembly in 1977 is constitutionally indistinguishable from the statutory complex approved by the United States Supreme Court in *Gregg.* The new death penalty procedures focus the sentencing authorities' attention on the particularized nature of the crime and the particularized characteristics of the individual defendant. The guidance provided by the sentencing procedures reduces the likelihood that the sentencing authority will impose a sentence of death capriciously. Additionally, the requirement that the sentencing authority specify the factors it relied upon in reaching its decision ensures that meaningful appellate review will be available to every capital defendant.

## A

Appellants Shaw and Roach contend as did the capital defendant in *Gregg,* that the unbridled discretion of the Solicitor to extend mercy to any capital defendant renders the statutory complex facially invalid. This issue was decided adversely to appellants by *Gregg* and does not merit further consideration by this Court.

Appellants contend, however, that on the facts of this case the decision of the Solicitor to seek the death penalty against them was arbitrary and capricious in view of the Solicitor's decision not to seek the death penalty against Mahaffey. Appellants contend there was no basis for distinguishing them from Mahaffey for purposes of seeking the death penalty. We disagree.

While these three defendants are equally guilty of the crime of murder as defined by the laws of this State, they are not *ipso facto* deserving of the same punishment. See *Lockett v. Ohio, supra.*

There is testimony in the transcript of record demonstrating that both Shaw and Roach were triggermen. There is no evidence that Mahaffey was a triggerman. This one fact is sufficient to distinguish Mahaffey from Roach and Shaw for purposes of the death penalty. Additionally, as the only witnesses to these crimes were killed, the State's case against Shaw and Roach would have been substantially impaired without Mahaffey's testimony.

The Solicitor chose to bargain with Mahaffey rather than Shaw or Roach because it was unlikely a death sentence would be imposed on Mahaffey. The decision of the Solicitor to not seek the death penalty for Mahaffey does not, on these facts, require a similar consideration for Shaw and Roach.

## B

Appellants also contend, the statutory complex is constitutionally defective because it does not assign numerical values to the aggravating and mitigating circumstances so that the sentencing authority can determine when the mitigating circumstances outweigh the aggravating circumstances. This issue was decided adversely to appellants in *Proffit v. Florida,* 428 U. S. 242, 96 S. Ct. 2960, 49 L. Ed. (2d) 913 (1976).

## C

Appellants contend the statutory circumstances of aggravation have "no rational basis, but are merely arbitrary classifications decided upon by the drafters of the statute." Appellants do not challenge any particular circumstance of aggravation, but argue against the statutory complex as a whole.

We are not impressed with this argument. The General Assembly has retained the death penalty only for murder, and only then when the murder is committed under at least one of seven (7) specific aggravating circumstances. The list of aggravating circumstances adopted by the General Assembly is not arbitrary on its face, and appellants do not contend that any particular circumstance of aggravation has been rendered arbitrary by its application to them. We resolve this issue adversely to appellants.

We conclude, therefore, that Section 16-3-20 through Section 16-3-28, Cum. Supp. 1978, are constitutional, and that a sentence of death may be lawfully imposed pursuant to the statutory complex.

## METHOD OF EXECUTION

Appellants next challenge the method of execution employed in this State.

Section 24-3-530, 1976 Code, provides that all persons who are convicted of a capital crime and receive a sentence of death "shall suffer such penalty by electrocution."

The argument that the use of electrocution as a means of inflicting the death penalty constitutes cruel and unusual punishment has been decided adversely to appellants by the United States Supreme Court in *In re Kemmler,* 136 U. S. 436, 10 S. Ct. 930, 34 L. Ed. 519 (1890). See also: *McElvaine v. Brush,* 142 U. S. 155, 12 S. Ct. 156, 35 L. Ed. 971 (1891); *Louisiana ex rel. Francis v. Resweber,* 329 U. S. 459, 67 S. Ct. 374, 91 L. Ed. 422 (1947), reh. denied, 330 U. S. 853, 67 S. Ct. 673, 91 L. Ed. 1295; Anno. 51 L. Ed. (2d) 886; Anno. 30 A. L. R. 1452.

## INTRODUCTION OF EVIDENCE

At the pre-sentence hearing appellants objected to the introduction by the State of any evidence in aggravation of punishment. Appellants argued that their pleas of guilty established the circumstances of aggravation of kidnapping, rape and armed robbery beyond a reasonable doubt and thereby rendered any evidence in aggravation inflammatory and prejudicial.

The Supreme Court has indicated that before a death sentence may be imposed, the attention of the sentencing authority must be directed to the specific circumstances of the crime and the characteristics of the person who committed the crime. *Gregg, supra.* The sentencing authority should have as much information before it as possible:

Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is es-

sential in capital cases. *Lockett v. Ohio, supra,* 438 U. S. at 605, 98 S. Ct. at 2965, 57 L. Ed. (2d) at 990.

In (Stanislaus) *Roberts v. Louisiana,* 428 U. S. 325, 96 S. Ct. 3001, 49 L. Ed. (2d) 974 (1976) the Supreme Court struck down Louisiana's mandatory death penalty statute because it did not permit consideration of the circumstances of the particular offense. Speaking for the Court, Mr. Justice Stewart stated:

The constitutional vice of mandatory death sentence statutes—lack of focus on the circumstances of the particular offense and the character and propensities of the offender—is not resolved by Louisiana's limitation of first-degree murder to various categories of killings. The diversity of circumstances presented in cases falling within the single category of killings during the commission of a specified felony, . . . underscores the rigidity of Louisiana's enactment . . . 428 U. S. at 333, 96 S. Ct. at 3006, 49 L. Ed. (2d) at 981-982.

Here, the only information possessed by the sentencing authority prior to the introduction by the State of evidence in aggravation was that appellants were guilty of murder committed while in the commission of rape, kidnapping, and armed robbery. The diversity of circumstances under which murder can be committed while in the commission of rape, kidnapping, and armed robbery requires that the sentencing authority be given as much information as possible about the circumstances of the particular crime.

The trial judge correctly permitted the State to introduce evidence to establish the circumstances of aggravation.

It is further contended, however, that certain specific items of evidence were improperly admitted at the pre-sentence hearing.

The State was permitted, over appellants' objections, to introduce seven photographs into evidence at the pre-sentence hearing.

Three of the photographs show Ms. Hartness's body as it was found at the scene of her murder. The fourth photograph shows a close-up view of the disfigurement to her left breast, and the fifth photograph shows a close-up view of the disfigurement to her pubic area. The sixth-photograph is of a piece of glass that was removed from Ms. Hartness's pubic area. The seventh photograph is of a feminine tampon as it was found at the scene of the murder.

These photographs illustrate not only the scene of the crime as found by the law enforcement officers, but they also depict the *post-mortem* abuse of Ms. Hartness's body by Shaw.

Appellants argue the photographs should not have been admitted at the pre-sentence hearing because *post-mortem* abuse is not a statutory circumstance of aggravation.

Appellants have misinterpreted the statutory complex.

The General Assembly adopted this State's current death penalty statutes in an attempt to comply with the guidelines laid down by the United States Supreme Court in *Gregg*. Perhaps the most emphasized of these guidelines is the need for an individualized sentence, considering both the circumstances of the crime and the individual defendant.

The purpose of the bifurcated trial proceeding is to permit the introduction of evidence at the pre-sentence hearing that normally would be inadmissible at the guilt determination proceeding. The pre-sentence hearing is for the introduction of *additional* evidence in extenuation, mitigation or aggravation of punishment. The statute does not exclude from the consideration of the sentencing authority any evidence received at the guilt determination stage. To the contrary, the sentencing authority is required to consider all the evidence received at the guilt determination stage regarding the circumstances of the crime and the characteristics of the individual defendant together with *additional* evidence, if any, in extenuation, mitigation, or aggravation of punishment.

Here, the guilt determination stage consisted solely of the guilty pleas of appellants. No testimony was taken.

At the pre-sentence hearing testimony and other evidence, including the challenged photographs, was introduced by the State to give the sentencing authority as much information as possible about the particular circumstances of the crime. The challenged photographs were clearly admissible to illustrate the crimes committed against Ms. Hartness. *State v. Bellue,* 260 S. C. 39, 194 S. E. (2d) 193 (1973); *State v. Campbell,* 259 S. C. 339, 191 S. E. (2d) 770 (1972). They were also admissible to substantiate the State's assertion that Shaw returned to the scene of the Hartness murder.

The evidence that Shaw committed acts of *post-mortem* abuse to Ms. Hartness's body was likewise admissible not only as a circumstance of the crime, but also as evidence of Shaw's character. The acts of *post-mortem* abuse were of a violent sexual nature and bore a logical connection to the earlier rape of Ms. Hartness.

The photographs depicting the *post-mortem* abuse to Ms. Hartness's body were properly admitted into evidence and considered by the sentencing authority, not as additional evidence in aggravation of punishment, but as evidence of the circumstances of the crime and the characteristics of the individual defendant Shaw.

## SENTENCE REVIEW

The sentences of death imposed against appellants must conform to the requirements of Section 16-3-20, Cum. Supp. 1978. The duty falls to this Court under Section 16-3-25, Cum. Supp. 1978, to review the entire record and transcript, the report of the trial judge,[3] and the arguments of counsel to determine (1) whether the sentences of death were imposed under the influence of passion,

---

3 The reports of the trial judge in this case are found at Appendix B and Appendix C to this opinion for appellants Shaw and Roach respectively.

prejudice, or any other arbitrary factor; (2) whether the evidence supports the sentencing authority's findings of statutory aggravating circumstances; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

## Product of Passion

The sentences of death were imposed by the trial judge without the intervention of a jury. Before imposing sentence the trial judge found as an affirmative fact that the death penalty was warranted by the evidence and that its imposition was not influenced by passion, prejudice or any other arbitrary factor.

Appellants present no argument that the death sentences were imposed in violation of this requirement. We have carefully reviewed the sentences and are satisfied they were not influenced by passion, prejudice or any other arbitrary factor but were the products of sound and careful deliberation based on the evidence.

## Circumstances of Aggravation

The sentencing authority imposed the sentences of death after finding the following three statutory circumstances of aggravation beyond a reasonable doubt:

(1) Murder committed while in the commission of rape;

(2) Murder committed while in the commission of kidnapping;

(3) Murder committed while in the commission of armed robbery..

Appellants pled guilty to the offenses of murder, rape, kidnapping and armed robbery. The evidence supports their pleas of guilty as well as the finding of the sentencing authority that the murders were committed while in the commission of the other three crimes to which appellants pled guilty.

We have carefully reviewed the sentences and are satisfied that the evidence supports the sentencing authority's findings of statutory aggravating circumstances beyond a reasonable doubt.

*Sentence Comparison*

As an additional check against the random imposition of the death penalty, this Court is directed to determine whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

We have compared the death sentences imposed upon appellants with the sentences imposed in all prior capital cases tried under the current death penalty statutes [4] and are satisfied that there are no similar cases against which the proportionality of the sentences imposed upon appellants can be measured.

The inability of this Court to compare this case with any other similar cases does not require, however, that appellants' sentences be set aside. Any system of review that requires a comparison of each case with all similar prior cases must have a beginning. There will be a first case for each type or category of capital case that may appear and that first case necessarily cannot be compared to any other similar cases. The first case must stand alone otherwise comparative sentence review would be forever impossible.

The current death penalty statutes comply with the guidelines set out by the United States Supreme Court in *Gregg*. We have considered and overruled each assignment of error by appellants and have completed the statutorily mandated sentence review. Additionally, we have searched the record *in favorem vitae* for any prejudicial error and have found none.

---

[4] Capital cases tried and reviewed under prior death penalty statutes are definitionally different from cases tried under the current statutes and provide no basis for meaningful sentence review. See *Smith v. Commonwealth*, 248 S. E. (2d) 135 (Va. 1978); and *Waye v. Commonwealth*, 251 S. E. (2d) 202 (Va. 1979).

Accordingly, the sentences of death imposed upon appellants Joseph Carl Shaw and James Terry Roach are affirmed.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.

## APPENDIX A

*§ 16-3-20. Punishment for murder: separate sentencing proceeding to determine whether sentence should be death or life imprisonment.*

(A) A person who is convicted of or pleads guilty to murder shall be punished by death or by imprisonment for life and shall not be eligible for parole until the service of twenty years, notwithstanding any other provisions of law. *Provided,* however, that notwithstanding the provisions of this section, under no circumstances shall a female who is pregnant with child be executed so long as she is in that condition.

(B) Upon conviction or adjudication of guilt of a defendant of murder, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable after the lapse of twenty-four hours unless waived by the defendant. If the trial jury has been waived by the defendant and the State, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before the court. In the sentencing proceeding, the jury or judge shall hear additional evidence in extenuation, mitigation or aggravation of the punishment. Only such evidence in aggravation as the State has made known to the defendant in writing prior to the trial shall be admissible. This section shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of South Carolina or the applicable laws of either. The State, the defendant and

his counsel shall be permitted to present arguments for or against the sentence of death. The defendant and his counsel shall have the closing argument regarding the sentence imposed.

(C) The judge shall consider, or he shall include in his instructions to the jury for it to consider, any mitigating circumstances otherwise authorized or allowed by law and any of the following statutory aggravating and mitigating circumstances which may be supported by the evidence:

(a) Aggravating circumstances:

(1) Murder was committed while in the commission of the following crimes or acts: (a) rape, (b) assault with intent to ravish, (c) kidnapping, (d) burglary, (e) robbery while armed with a deadly weapon, (f) larceny with use of a deadly weapon, (g) housebreaking, and (h) killing by poison and (i) physical torture;

(2) Murder was committed by a person with a prior record of conviction for murder;

(3) The offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person;

(4) The offender committed the offense of murder for himself or another, for the purpose of receiving money or any other thing of monetary value;

(5) The murder of a judicial officer, former judicial officer, solicitor, former solicitor, or other officer of the court during or because of the exercise of his official duty;

(6) The offender caused or directed another to commit murder or committed murder as an agent or employee of another person;

(7) The offense of murder was committed against any peace officer, corrections employee or fireman while engaged in the performance of his official duties.

(b) Mitigating, circumstances:

(1) The defendant has no significant history of prior criminal conviction involving the use of violence against another person.

(2) The murder was committed while the defendant was under the influence of mental or emotional disturbance;

(3) The victim was a participant in the defendant's conduct or consented to the act;

(4) The defendant was an accomplice in the murder committed by another person and his participation was relatively minor;

(5) The defendant acted under duress or under the domination of another person;

(6) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.

(7) The age or mentality of the defendant at the time of the crime;

(8) The defendant was provoked by the victim into committing the murder;

(9) The defendant was below the age of eighteen at the time of the crime.

The statutory instructions as to aggravating and mitigating circumstances shall be given in charge and in writing to the jury for its deliberation. The jury, if its verdict be a recommendation of death, shall designate in writing, and signed by all members of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt. In nonjury cases the judge shall make such designation. Unless at least one of the statutory aggravating circumstances enumerated in this section is so found, the death penalty shall not be imposed. Where a statutory aggravating circumstance is found and a recommendation of death is made, the court shall sentence the defendant to death. The trial judge, prior to imposing the death penalty, shall find as

an affirmative fact that the death penalty was warranted under the evidence of the case and was not a result of prejudice, passion, or any other arbitrary factor. Where a sentence of death is not recommended by the jury, the court shall sentence the defendant to life imprisonment. In the event that all members of the jury after a reasonable deliberation cannot agree on a recommendation as to whether or not the death sentence should be imposed on a defendant found guilty of murder, the trial judge shall dismiss such jury and shall sentence the defendant to life imprisonment. The jury shall not recommend the death penalty if the vote for such penalty is not unanimous.

(D) Notwithstanding the provisions of § 14-7-1020, in cases involving capital punishment any person called as a juror shall be examined by the attorney for the defense.

(E) In every criminal action in which a defendant is charged with a crime which may be punishable by death, a person may not be disqualified, excused or excluded from service as a juror therein by reason of his beliefs or attitudes against capital punishment unless such beliefs or attitudes would render him unable to return a verdict of guilty according to law.

§ 16-3-25. Punishment for murder: review by Supreme Court of imposition of death penalty.

(A) Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the sentence shall be reviewed on the record by the Supreme Court of South Carolina. The clerk of the trial court, within ten days after receiving the transcript, shall transmit the entire record and transcript to the Supreme Court of South Carolina together with a notice prepared by the clerk and a report prepared by the trial judge. The notice shall set forth the title and docket number of the case, the name of the defendant and the name and address of his attorney, a narrative statement of the judgment, the offense, and the punishment

prescribed. The report shall be in the form of a standard questionnaire prepared and supplied by the Supreme Court of South Carolina.

(B) The Supreme Court of South Carolina shall consider the punishment as well as any errors by way of appeal.

(C) With regard to the sentence, the court shall determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in § 16-3-20, and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(D) Both the defendant and the State shall have the right to submit briefs within the time provided by the court and to present oral arguments to the court.

(E) The court shall include in its decision a reference to those similar cases which it took into consideration. In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:

(1) Affirm the sentence of death; or

(2) Set the sentence aside and remand the case for resentencing by the trial judge based on the record and argument of counsel. The records of those similar cases referred to by the Supreme Court of South Carolina in its decision, and the extracts prepared as hereinafter provided for, shall be provided to the resentencing judge for his consideration. If the court finds error prejudicial to the defendant in the sentencing proceeding conducted by the trial judge before the trial jury as outlined under Item (B) of § 16-3-20, the

court may set the sentence aside and remand the case for a resentencing proceeding to be conducted by the same or a different trial judge and by a new jury impaneled for such purpose. In the resentencing proceeding, the new jury, if the defendant does not waive the right of a trial jury for the resentencing proceeding, shall hear evidence in extenuation, mitigation or aggravation of the punishment in addition to any evidence admitted in the defendant's first trial relating to guilt for the particular crime for which the defendant has been found guilty.

(F) The sentence review shall be in addition to direct appeal, if taken, and the review and appeal shall be consolidated for consideration. The court shall render its decision on all legal errors, the factual substantiation of the verdict, and the validity of the sentence.

§ 16-3-26. *Punishment for murder: notice to defense attorney of solicitor's intention to seek death penalty; appointment of attorneys for indigent; investigative, expert or other services.*

(A) Whenever the Solicitor seeks the death penalty, he shall notify defense attorney of his intention to seek such penalty at least 30 days prior to the trial of the case. At the request of the defense attorney, the defense attorney shall be excused from all other trial duties ten days prior to the term of court in which the trial is to be held.

(B) Whenever any person is charged with murder and the death penalty is sought, the court, upon determining that such person is unable financially to retain adequate legal counsel, shall appoint two attorneys to defend such person in the trial of the action. One of the attorneys so appointed shall have at least five years' experience as a licensed attorney and at least three years' experience in the actual trial of felony cases, and only one of the attorneys so appointed shall be the Public Defender or a member of his staff.

The State shall pay from funds appropriated for the defense of indigents such fees and costs, not to exceed fifteen hundred dollars, as the court shall deem appropriate.

(C) Upon a finding in *ex parte* proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant whether in connection with issues relating to guilt or sentence, the court shall authorize the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment, from state funds appropriated for the defense of indigents, of fees and expenses not to exceed two thousand dollars as the court shall deem appropriate. Upon a finding that timely procurement of such services cannot await prior authorization, the court may authorize the provision of and payment for such services *nunc pro tunc.*

§ *16-3-27. Punishment for murder: pregnant females.*

In no case and under no circumstances shall a female who is pregnant with child be executed so long as she is in that condition or anytime following thereafter for a period of at least nine months.

§ *16-3-28. Punishment for murder: right of defendant to make last argument.*

Notwithstanding any other provision of law, in any criminal trial where the maximum penalty is death or in a separate sentencing proceeding following such trial, the defendant or his counsel shall have the right to make the last argument.

APPENDIX B

REPORT OF THE TRIAL JUDGE
OF THE
COURT OF GENERAL SESSIONS FOR RICHLAND COUNTY
SOUTH CAROLINA*

The State v. Joseph Carl Shaw

Docket No. 77-GS-40-2942

A. Data Concerning the Defendant**

1. Name Shaw Joseph Carl 2. Date of Birth 3 31 55

 Last First Middle Mo. Day Yr.

3. Social Security Number [ ] 407 86 3041 [ ] Unknown

4. Sex: M [X] 5. Race: W [X]
 F [ ] B [ ]

 Other
 (Specify): _____

6. Education—Highest Grade Completed:

 1 2 3 4 5 6 7 8 ⑨ 10 11 12 13 14 15 16
 (Circle One) (College)

7. Do you have an opinion as to the defendant's intelligence level?

 Yes [X] No [ ]

 If so, is it
 a. Below Average [X]
 b. Average [ ]
 c. Above Average [ ]

8. Was a psychiatric evaluation performed? Yes [X] No [ ]

 Jack C. Dunlap, M.D.
 a. If performed,*** by whom? Harold C. Morgan, M.D.
 b. If performed, is defendant

 (1) Able to distinguish right from wrong? Yes [X] No [ ]
 (2) Able to cooperate intelligently in his
 own defense? [X] [ ]

---

*Attach separate sheets where insufficient space provided for response.
**Separate report must be submitted for each defendant sentenced to
death.
***If more than one evaluation was performed, attach a separate
response for each evaluation.

c. If performed, were character or behavior
 disorders found? [X] [ ]
 (If answer is yes please elaborate)

 LATENT SCHIZOPHRENIC

 POSSIBLE TOXIC PSYCHOSIS (ALCOHOL AND
 DRUG ABUSE)
 (see below)

Emotional disturbance of psychiatric pathological proportions which influenced commission of offenses and directly or indirectly affected the capacity to appreciate the criminality of conduct.

9. Does the defendant have a record of prior convictions?

 Yes [ ] No [X]

 a. If so, either attach hereto a record manifesting such prior convictions(s) of list the offense(s), the date(s) of the offense(s) and the sentence(s) imposed:

| Offense | Date of Offense | Sentence Imposed |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |

10. Was the defendant a resident or nonresident of the county in which trial was held?

 Resident [ ] Nonresident [X] Stationed at Fort Jackson, Columbia, S. C.

### B. Data Concerning Pre-Trial Matters

1. The defendant was arrested on _____ November 2 _____, 1977.

2. Was a preliminary hearing requested? Yes [X] No [ ]

3. Was a preliminary hearing conducted? Yes [X] No [ ]

4. The defendant was indicted at the _____ November 29 ___, 19 77 Term of the Court of General Sessions for _____ Richland _____ County, South Carolina.

5. List each charge alleged in the indictment.

a. Conspiracy

b. Conspiracy

c. Murder

d. Murder

e. Rape

f. Criminal Sexual Conduct

g. Armed Robbery

6. The defendant was arraigned on _____ December 5 _____, 19 77 .

a. If not arraigned, did the defendant waive arraignment?

Yes [ ] No [ ]

7. Was the defendant provided with a true copy of the whole indictment at least three days prior to his trial thereupon?

Yes [X] No [ ]

a. If not, did the defendant waive this right to a three-day sight of the indictment?

Yes [ ] No [ ]

8. Did the Solicitor notify the defendant at least thirty days before trial that the State would seek the imposition of the death penalty upon the defendant?

Yes [X] No [ ]

9. Did the Solicitor make known to the defendant in writing prior to trial the evidence in aggravation of punishment thereafter introduced by the State during the trial or during the sentencing proceeding?

Yes [X] No [ ] There was dispute as to the sufficiency of the notice.

10. Did the defendant move for a change of venue?

Yes [ ] No [X]

a. If so, was the venue changed? N/A

Yes [ ] No [ ]

(1) If so, designate the county _____ .

### C. Data Concerning the Trial

1. The defendant was brought to trial in the Court of General Sessions for Richland County, South Carolina, on December, 12 , 19 77, during the December , 1977 Term of that Court.

2. How did the defendant plead Guilty [X]
 Not Guilty [ ]

3. List each offense of which the defendant was adjudicated guilty and each offense of which the defendant was acquitted:

 a. The offense(s) of which the defendant was convicted:

 (1) Conspiracy

 (2) Conspiracy

 (3) Murder

 (4) Murder

 (5) Rape

 (6) Criminal Sexual Conduct

 (7) Armed Robbery

 b. The offense(s) of which the defendant was acquitted:

 (1) _____

 (2) _____

 (3) _____

 (4) _____

 (5) _____

4. On what date and at what time did the adjudications occur?
 December 12 , 19 77 , at
 4:30 o'clock, p. m.

D. Data Relating to Sentencing Proceeding*

1. Before whom was the defendant's sentencing proceeding conducted?

the trial jury [ ]
the trial judge [X]
a new jury [ ]
a new trial judge [ ]

a. If conducted before the trial jury,

(1) On what date and at what time was the sentencing proceeding held?

_____, 19_____, at _____ o'clock, _____. m.

(a) If such proceeding was conducted less than twenty-four hours after the defendant's conviction, did the defendant waive the twenty-four hour waiting period?

Yes [ ] No [ ]

b. If conducted before the trial judge or a new judge,

(1) And if the defendant was convicted by a jury,

(a) Did the defendant and the State waive having the trial jury recommend sentence?

Yes [ ] No [ ]

*The term "sentencing proceeding" includes the term "resentencing proceeding".

"1" If not, was the sentencing proceeding conducted by the trial judge because the case, due to nonprejudicial error, had been remanded to the trial court for resentencing based upon the record and argument of counsel?

Yes [ ] No [ ]

(b) On what date and at what time was the sentencing proceeding held?

_____, 19_____, at _____ o'clock,

_____. m.

"1" If such proceeding was conducted less than twenty-four hours after the defendant's conviction, did the defendant waive the twenty-four hour waiting period?

Yes [ ] No [ ]

(2) And if the defendant was convicted upon a plea of guilty, on what date was the sentencing proceeding held?

December 14,15 and 16 , 19 77 .

c. If conducted before a new jury,

(1) On what date was the sentencing proceeding held?

—————————————, 19———.

(2) Was such proceeding conducted by the same judge who presided over the defendant's trial?

Yes [ ] No [ ]

2. Which of the following statutory aggravating circumstances were instructed, if the sentencing proceeding was conducted before a jury, and which of those circumstances were found, irrespective of whether or not that proceeding was conducted before a jury or a trial judge?

| | Instructed | Found |
|---|---|---|
| a. Murder was committed while in the commission of | | |
| (1) Rape | [ ] | [X] |
| (2) Assault with intent to ravish | [ ] | [ ] |
| (3) Kidnapping | [ ] | [X] |
| (4) Burglary | [ ] | [ ] |
| (5) Robbery while armed with a deadly weapon | [ ] | [X] |
| (6) Larceny with use of a deadly weapon | [ ] | [ ] |
| (7) Housebreaking | [ ] | [ ] |
| (8) Killing by poison | [ ] | [ ] |
| b. Murder was committed by a person with a prior record of conviction for murder. | [ ] | [ ] |
| c. The offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person. | [ ] | [ ] |
| d. The offender committed the offense of murder for himself or another for the purpose of receiving money or any other thing of monetary value. | [ ] | [ ] |
| e. The murder of a judicial officer, former judicial officer, solicitor, former solicitor, or other officer of the court during or because of the exercise of his official duty. | [ ] | [ ] |

Instructed Found

f. The offender caused or directed another to commit murder or committed murder as an agent or employee of another person. [ ] [ ]

g. The offense of murder was committed against any peace officer, corrections employee or fireman while engaged in the performance of his official duties. [ ] [ ]

3. Was (were) the aggravating circumstance(s) found supported by the evidence?

 Yes [X] No [ ]

4. Was there evidence of mitigating circumstances?

 Yes [X] No [ ]

5. If so, which of the following mitigating circumstances was in evidence?

a. The defendant has no significant history of prior criminal activity involving the use of violence against another person. [X]

b. The murder was committed while the defendant was under the influence of extreme mental or emotional disturbance. [X]

c. The victim was a participant in the defendant's conduct or consented to the act. [ ]

d. The defendant was an accomplice in a murder committed by another person and his participation was relatively minor. [ ]

e. The defendant acted under duress or under the domination of another person. [ ]

f. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. [X]

g. The age or mentality of the defendant at the time of the crime(s). [X]

h. The defendant was provoked by the victim into committing murder. [ ]

i. The defendant was below the age of eighteen at the time of the crime(s). [ ]

j. Other. [ ]

Please explain if (j) is checked.

_____

_____

_____

6. If tried with a jury, was the jury instructed to consider the circumstances in 5 as mitigating circumstances?

 Yes [ ] No [ ]

7. Was the jury provided in writing for its deliberation the statutory instructions as to aggravating and mitigating circumstances?

 Yes [ ] No [ ]

8. As trial judge, did you, prior to imposing the sentence of death upon the defendant, find as an affirmative fact that the death penalty was warranted under the evidence of the case and was not a result of prejudice, passion or any other arbitrary factor?

 Yes [X] No [ ]

### E. Data Relating to Offense(s)

1. Was there evidence that the defendant, at the time the offense(s) was (were) committed, was

 a. Under the influence of alcohol?

 Yes [X] No [ ]

 b. Under the influence of narcotics or other dangerous drugs?

 Yes [X] No [ ]

2. Was (were) any weapon(s) used in the commission of the crime of murder?

 Yes [X] No [ ]

 a. If so, check each weapon used
 (1) Poison [ ]
 (2) Pistol [ ]
 (3) Rifle [X]
 (4) Shotgun [ ]
 (5) Blunt instrument
 (Describe)

 _____ [ ]
 (6) Sharp instrument
 (Describe)

 _____ [ ]
 (7) Motor vehicle [ ]
 (8) Other
 (Describe)

 _____ [ ]

3. Cause of death. gunshot

4. County in which the body was found. Richland

5. County in which the murder occurred if different from county in which the body was found. Richland

### F. Data Relating to Victim

1. What was the victim's age? 14 and 17

2. Was the victim related by blood or marriage to the defendant?

 Yes [ ] No [X]

 a. If so, what was the relationship? _____

3. Was the victim the same race as the defendant?

 Yes [X] No [ ]

4. Was the victim the same sex as the defendant?

 One Male
 Yes [ ] No [ ] One Female

5. Was the victim physically harmed or tortured?

 Yes [X] No [ ]
 (One victim raped)

 If yes, state nature of harm or extent of torture:

 One victim was raped.

### G. Data Concerning Defense Counsel

1. Who was (were) the defendant's attorney(s) and what was (were) his (their) mailing address(es)?

 Name Mailing Address

 a. Kermit S. King, 1426 Richland Street, Columbia, S. C. 29201

 b. Dallas D. Ball, 1412 Barnwell Street, Columbia, S. C. 29201

 c. W. Thomas Vernon, P. O. Box 11716, Columbia, S. C. 29211

 d. _____

2. Did the defendant retain his own counsel or did the court appoint defense counsel?

Retained by defendant [ ]
Appointed by court [X]

a. Specify for each such counsel, the date retained or appointed, the number of years as a licensed attorney and the number of years of actual felony trial experience.

| Name | Date retained or appointed | Years experience as attorney | Years felony trial experience |
|---|---|---|---|
| (1) Kermit S. King | 11-4-77 | 19 | 19 |
| (2) Dallas D. Ball | 11-4-77 | 13 | 13 |
| (3) W. Thomas Vernon | 11-4-77 | 2 | 2 |
| (4) | | | |

3. Identify by name each attorney who, at the time of his appointment, was employed by the Public Defender's Office.

N/A

4. Did each counsel serve throughout the trial?

Yes [X] No [ ]

a. If not, explain in detail. _____

## H. General Considerations

1. Was race raised by the defense as an issue in the trial? Yes [ ] No [X]

2. Did race otherwise appear as an issue in the trial? Yes [ ] No [X]

3. Were members of the defendant's race represented on the petit jury? Yes [ ] No [ ] N/A

4. Were members of the defendant's race represented on the jury venire? Yes [ ] No [ ] N/A

5. Was there any evidence that members of the defendant's race were systematically excluded from the jury? Yes [ ] No [ ] N/A

6. Was the jury instructed to exclude race as an issue? Yes [ ] No [ ] N/A

7. Was there extensive publicity in the community concerning this case? Yes [X] No [ ]

8. Was the jury instructed to disregard such publicity? Yes [ ] No [ ] N/A

9. Was the jury sequestered? Yes [ ] No [ ] N/A

10. Was the jury instructed to avoid any influence of passion, prejudice or any other arbitrary factor when recommending sentence? Yes [ ] No [ ] N/A

11. Your general comments concerning the appropriateness of the sentence imposed in this case.

 It is the Court's belief that the death sentence is justified under the circumstances of this case.

12. If the defendant is a female, is she currently pregnant? Yes [ ] No [ ]

 a. If so, the anticipated delivery date is

 _____ _____, 19_____.

13. This report was submitted to the defendant's counsel for such comments as he (they) desired to make concerning the factual accuracy of the report and

 a. (their) comments are attached [X]
 b. He (they) stated he (they) had no comments [ ]
 c. He has (they have) not responded [ ]

Defendant's counsels find the report factually accurate (and supplied most of the information where not already known from the record in this case).

I. Chronology of Case

| | | Elapsed Days |
|---|---|---|
| 1. Date of offense | October 29, 1977 | |
| 2. Date of arrest | November 3, 1977 | 5 |
| 3. Date trial began | December 12, 1977 | 44 |
| 4. Date sentence imposed | December 16, 1977 | 48 |
| 5. Date post trial motions ruled on | | |
| 6. Date trial judge's reported completed | | |
| 7. *Date received by Supreme Court | July 19, 1978 | |
| 8. *Date sentence review completed | May 28, 1979 | |
| 9. *Total elapsed days | From date of Offense to Date of Opinion | 576 |

*To be completed by Supreme Court

/s/ David W. Harwell

Judge, Court of General Sessions

Richland County,

South Carolina

December 16th, 1977

Date

APPENDIX C

REPORT OF THE TRIAL JUDGE
OF THE
COURT OF GENERAL SESSIONS FOR Richland COUNTY,
SOUTH CAROLINA*

The State v. James Terry Roach

Docket No. 77-GS-40-2942

A. Data Concerning the Defendant**

1. Name Roach James Terry 2. Date of Birth 2 18 60
 Last First Middle Mo. Day Yr.

3. Social Security Number [ ] 252 25 4269 [ ] Unknown

4. Sex: M [X] 5. Race: W [X]
 F [ ] B [ ]

 Other
 (Specify): _____

6. Education—Highest Grade Completed:

 1 2 3 4 5 6 7 8 ⑨ 10 11 12 13 14 15 16
 (Circle One) (College)

7. Do you have an opinion as to the defendant's intelligence level?

 Yes [X] No [ ]

 If so, is it
 a. Below Average [X]
 b. Average [ ]
 c. Above Average [ ]

8. Was a psychiatric evaluation performed? Yes [X] No [ ]
 Dr. Edmond Camp, III
 a If performed,*** by whom? Dr. Wayne Lockhart
 b. If performed, is defendant

 (1) Able to distinguish right from wrong? Yes [X] No [ ]
 (2) Able to cooperate intelligently in his
 own defense? [X] [ ]
 *Attach separate sheets where insufficient space provided for response.
 **Separate report must be submitted for each defendant sentenced to
 death.
 ***If more than one evaluation was performed, attach a separate
 response for each evaluation.

c. If performed, were character or behavior disorders found? [X] [ ]

(If answer is yes please elaborate)

1. Mental Retardation
_____

2. Antisocial Personality Disorder
_____

The defendant and others testified that he had hallucinations as result of alcohol and drug use.

9. Does the defendant have a record of prior convictions?

 Yes [X] No [ ]

 a. If so, either attach hereto a record manifesting such prior conviction(s) or list the offense(s), the date(s) of the offense(s) and the sentence(s) imposed:

| Offense | Date of Offense | Sentence Imposed |
|---------|-----------------|------------------|
| 1. Juvenile record only | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |

10. Was the defendant a resident or nonresident of the county in which trial was held?

 Resident [ ] Nonresident [X]

### B. Data Concerning Pre-Trial Matters

1. The defendant was arrested on November 3 , 1977.

2. Was a preliminary hearing requested? Yes [X] No [ ]

3. Was a preliminary hearing conducted? Yes [X] No [ ]

4. The defendant was indicted at the November 29 , 19 77 Term of the Court of General Sessions for Richland County, South Carolina.

5. List each charge alleged in the indictment.

 a. Conspiracy

 b. Conspiracy

 c. Murder

 d. Murder

 e. Rape

 f. Criminal Sexual Conduct

 g. Armed Robbery

6. The defendant was arraigned on December 5 , 19 . 77 .

 a. If not arraigned, did the defendant waive arraignment?

 Yes [ ] No [ ]

7. Was the defendant provided with a true copy of the whole indictment at least three days prior to his trial thereupon?

 Yes [X] No [ ]

 a. If not, did the defendant waive this right to a three-day sight of the indictment?

 Yes [ ] No [ ]

8. Did the Solicitor notify the defendant at least thirty days before trial that the State would seek the imposition of the death penalty upon the defendant?

 Yes [X] No [ ]

9. Did the Solicitor make known to the defendant in writing prior to trial the evidence in aggravation of punishment thereafter introduced by the State during the trial or during the sentencing proceeding?

 But there was dispute as to the sufficiency of the notice.
 Yes [X] No [ ]

10. Did the defendant move for a change of venue?

 Yes [ ] No [X]

 a. If so, was the venue changed?

 Yes [ ] No [ ]

 (1) If so, designate the county _____.

C. Data Concerning the Trial

1. The defendant was brought to trial in the Court of General Sessions for Richland County, South Carolina, on December 13 , 19 77, during the December , 19 77 Term of that Court.

2. How did the defendant plead? Guilty [X]
 Not Guilty [ ]

3. List each offense of which the defendant was convicted and each offense of which the defendant was acquitted?

 a. The offense(s) of which the defendant was convicted:

 (1) Conspiracy-Nolo Contendre

 (2) Conspiracy-Nolo Contendre

 (3) Murder

 (4) Murder

 (5) Rape

 (6) Criminal Sexual Conduct

 (7) Armed Robbery .

 b. The offense(s) of which the defendant was acquitted:

 (1) _____

 (2) _____

 (3) _____

 (4) _____

 (5) _____

4. On what date and at what time did the conviction(s) occur?
 December 13 , 19 77 , at
 10:30 o'clock, a. m.

### D. Data Relating to Sentencing Proceeding*

1. Before whom was the defendant's sentencing proceeding conducted?

the trial jury [ ] a new jury [ ]
the trial judge [X] a new trial judge [ ]

 a. If conducted before the trial jury,

 (1) On what date and at what time was the sentencing proceeding held?

 _____, 19\_\_\_\_\_, at _____ o'clock, _____. m.

 (a) If such proceeding was conducted less than twenty-four hours after the defendant's conviction, did the defendant waive the twenty-four hour waiting period?

 Yes [ ] No [ ]

 b. If conducted before the trial judge or a new trial judge,

 (1) And if the defendant was convicted by a jury,
 (a) Did the defendant and the State waive having the trial jury recommend sentence?

 Yes [ ] No [ ]

*The term "sentencing proceeding" includes the term "resentencing proceeding".

 "1" If not, was the sentencing proceeding conducted by the trial judge because the case, due to nonprejudicial error, had been remanded to the trial court for resentencing based upon the record and argument of counsel?

 Yes [ ] No [ ]

 (b) On what date and at what time was the sentencing proceeding held?

 _____, 19\_\_\_\_\_; at _____ o'clock, _____. m.

 "1" If such proceeding was conducted less than twenty-four hours after the defendant's conviction, did the defendant waive the twenty-four hour waiting period?

 Yes [X] No [ ]

 (2) And if the defendant was convicted upon a plea of guilty, on what date was the sentencing proceeding held?
 December 14, 15 and 16 , 19 77 .

c. If conducted before a new jury,

 (1) On what date was the sentencing proceeding held?

 _____, 19 .

 (2) Was such proceeding conducted by the same judge who presided over the defendant's trial?

 Yes [ ] No [ ]

2. Which of the following statutory aggravating circumstances were instructed, if the sentencing proceeding was conducted before a jury, and which of those circumstances were found, irrespective of whether or not that proceeding was conducted before a jury or a trial judge?

| | Instructed | Found |
|---|---|---|
| a. Murder was committed while in the commission of | | |
| (1) Rape | [ ] | [X] |
| (2) Assault with intent to ravish | [ ] | [ ] |
| (3) Kidnapping | [ ] | [X] |
| (4) Burglary | [ ] | [ ] |
| (5) Robbery while armed with a deadly weapon | [ ] | [X] |
| (6) Larceny with use of a deadly weapon | [ ] | [ ] |
| (7) Housebreaking | [ ] | [ ] |
| (8) Killing by poison | [ ] | [ ] |
| b. Murder was committed by a person with a prior record of conviction for murder. | [ ] | [ ] |
| c. The offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person. | [ ] | [ ] |
| d. The offender committed the offense of murder for himself or another for the purpose of receiving money or any other thing of monetary value. | [ ] | [ ] |
| e. The murder of a judicial officer, former judicial officer, solicitor, former solicitor, or other officer of the court during or because of the exercise of his official duty. | [ ] | [ ] |
| f. The offender caused or directed another to commit murder or committed murder as an agent or employee of another person. | [ ] | [ ] |

Instructed Found

g. The offense of murder was committed against
any peace officer, corrections employee or fire-
man while engaged in the performance of his
official duties. [ ] [ ]

3. Was (were) the aggravating circumstance(s) found supported by
the evidence?

 Yes [X] No [ ]

4. Was there evidence of mitigating circumstances?

 Yes [X] No [ ]

5. If so, which of the following mitigating circumstances was in
evidence?

 a. The defendant has no significant history of prior criminal
 activity involving the use of violence against another person. [X]
 b. The murder was committed while the defendant was under
 the influence of extreme mental or emotional disturbance. [X]
 c. The victim was a participant in the defendant's conduct or
 consented to the act. [ ]
 d. The defendant was an accomplice in a murder committed by
 another person and his participation was relatively minor. [ ]
 e. The defendant acted under duress or under the domination
 of another person. [X]
 f. The capacity of the defendant to appreciate the criminality
 of his conduct or to conform his conduct to the requirements
 of law was substantially impaired. [X]
 g. The age or mentality of the defendant at the time of the
 crime(s). [X]
 h. The defendant was provoked by the victim into committing
 murder. [ ]
 i. The defendant was below the age of eighteen at the time of
 the crime(s). [X]
 j. Other. [ ]

 Please explain if (j) is checked.

 _____

 _____

 _____

6. If tried with a jury, was the jury instructed to consider the cir-
cumstances in 5 as mitigating circumstances?

 Yes [ ] No [ ]

7. Was the jury provided in writing for its deliberation the statutory instructions as to aggravating and mitigating circumstances?

 Yes [ ] No [ ]

8. As trial judge, did you, prior to imposing the sentence of death upon the defendant, find as an affirmative fact that the death penalty was warranted under the evidence of the case and was not a result of prejudice, passion or any other arbitrary factor?

 Yes [X] No [ ]

### E. Data Relating to Offense(s)

1. Was there evidence that the defendant, at the time the offense(s) was (were) committed, was

 a. Under the influence of alcohol?

 Yes [X] No [ ]

 b. Under the influence of narcotics or other dangerous drugs?

 Yes [X] No [ ]

 a. If so, check each weapon used
 (1) Poison [ ]
 (2) Pistol [ ]
 (3) Rifle [X]
 (4) Shotgun [ ]
 (5) Blunt instrument
 (Describe)

 _____ [ ]
 (6) Sharp instrument
 (Describe)

 _____ [ ]
 (7) Motor vehicle [ ]
 (8) Other
 (Describe)

 _____ [ ]

3. Cause of death. Gunshot _____

4. County in which the body was found. Richland _____

5. County in which the murder occurred if different from county in which the body was found. Richland _____

## F. Data Relating to Victim

1. What was the victim's age? 14 and 17

2. Was the victim related by blood or marriage to the defendant?

 Yes [ ] No [X]

 a. If so, what was the relationship? _____

3. Was the victim the same race as the defendant?

 Yes [X] No [ ]

4. Was the victim the same sex as the defendant?

 One Male
 Yes [ ] No [ ] One Female

5. Was the victim physically harmed or tortured?

 Yes [X] No [ ]

 If yes, state nature of harm or extent of torture:

 Female was raped. _____

 _____

## C. Data Concerning Defense Counsel

1. Who was (were) the defendant's attorney(s) and what was (were) his (their) mailing address(es)?

 | Name | Mailing Address |
 |---|---|

 a. Walter W. Brooks, 2126 Devine St., Suite 101, Columbia, S. C. 29205

 b. Barry B. George, 1419 Bull Street, Columbia, S. C. 29201

 c. John A. Mason, P. O. Box 1017, Columbia, S. C. 29202

 d. _____

2. Did the defendant retain his own counsel or did the court appoint defense counsel?

 Retained by defendant [ ]
 Appointed by court [X]

 a. Specify for each such counsel, the date retained or appointed, the number of years as a licensed attorney and the number of years of actual felony trial experience.

| Name | Date retained or appointed | Years experience as attorney | Years felony trial experience |
|---|---|---|---|
| (1) Barry B. George | 11-4-77 | 7 | 7 |
| (2) Walter W. Brooks | 11-4-77 | 12 | 12 |
| (3) John A. Mason | 11-4-77 | 26 | 26 |
| (4) _____ | | | |

3. Identify by name each attorney who, at the time of his appointment, was employed by the Public Defender's Office.
 None
 _____
 _____

4. Did each counsel serve throughout the trial?

 Yes [X] No [ ]

 a. If not, explain in detail. _____
 _____

## H. General Considerations

1. Was race raised by the defense as an issue in the trial? Yes [ ] No [X]
2. Did race otherwise appear as an issue in the trial? Yes [ ] No [X]
3. Were members of the defendant's race represented on the petit jury? Yes [ ] No [ ] N/A
4. Were members of the defendant's race represented on the jury venire? Yes [ ] No [ ] N/A
5. Was there any evidence that members of the defendant's race were systematically excluded from the jury? Yes [ ] No [ ] N/A
6. Was the jury instructed to exclude race as an issue? Yes [ ] No [ ] N/A
7. Was there extensive publicity in the community concerning this case? Yes [ ] No [ ]
8. Was the jury instructed to disregard such publicity? Yes [ ] No [ ] N/A
9. Was the jury sequestered? Yes [ ] No [ ] N/A
10. Was the jury instructed to avoid any influence of passion, prejudice or any other arbitrary factor when recommending sentence? Yes [ ] No [ ] N/A

11. Your general comments concerning the appropriateness of the sentence imposed in this case.

It is the Court's belief that the death sentence is justified under

the circumstances of this case.

12. If the defendant is a female, is she currently pregnant? Yes [ ] No [ ]

a. If so, the anticipated delivery date is

_____ _____, 19_____.

13. This report was submitted to the defendant's counsel for such comments as he (they) desired to make concerning the factual accuracy of the report and

a. (their) comments are attached [X]
b. He (they) stated he (they) had no comments [ ]
c. He has (they have) not responded [ ]

Defendant's counsels find the report factually accurate and supplied most of the information where not already known from the record in this case.

■■■■■■■■■■

## I. Chronology of Case

| | | Elapsed Days |
|---|---|---|
| 1. Date of offense | October 29, 1977 | |
| 2. Date of arrest | November 3, 1977 | 5 |
| 3. Date trial began | December 12, 1977 | 44 |
| 4. Date sentence imposed | December 16, 1977 | 48 |
| 5. Date post trial motions ruled on | | |
| 6. Date trial judge's report completed | | |
| 7. *Date received by Supreme Court | July 19, 1978 | |
| 8. *Date sentence review completed | May 28, 1979 | 576 |
| 9. *Total elapsed days | From Date of Offense to Date of Opinion | |

*To be completed by Supreme Court

/s/ David W. Harwell
Judge, Court of General Sessions

Richland County, South Carolina

December 16, 1977
Date