[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 729 
In 1979, Freddie Lee Wright was indicted and convicted for the capital robbery of Warren Green and for the capital murder of both Warren and Lois Green under Alabama's 1975 Death Penalty Law. Alabama Code 1975, § 13-11-2 (a)(2) and § 13-11-2 (a)(10). Sentence was death by electrocution.
In 1981, this Court, 407 So.2d 565 (Ala. 1981), reversed that conviction on appeal and remanded on authority of Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), on remand, 396 So.2d 645 (Ala. 1980), and Ritter v. State,403 So.2d 154 (Ala. 1981), vacated and remanded, Alabama v. Ritter,454 U.S. 885, 102 S.Ct. 376, 70 L.Ed.2d 200 (1981), on remand,Ritter v. State, 414 So.2d 452 (Ala. 1981), vacated and remanded, Alabama v. Ritter, 457 U.S. 1114, 102 S.Ct. 2921,73 L.Ed.2d 1326 (1982), on remand, 429 So.2d 928 (Ala. 1983), because the 1975 Alabama Death Penalty Act precluded the jury from finding a defendant guilty of a lesser included offense.
In 1982, the 1981 reversal and remandment was vacated and remanded by the Supreme Court of the United States,457 U.S. 1114, 102 S.Ct. 2920, 73 L.Ed.2d 1325 (1982), for further consideration in light of Hopper v. Evans, 456 U.S. 605,102 S.Ct. 2049, 72 L.Ed.2d 367 (1982), which modified Beck by holding that a lesser included offense instruction must be given in a capital case "only when the evidence warrants such an instruction." Evans, 456 U.S. at 611, 102 S.Ct. at 2053,72 L.Ed.2d at 373 (emphasis in original).
On motion of the Attorney General of Alabama, any further decision by this Court was held in abeyance pending the decision of the Supreme Court of the United States in Baldwinv. Alabama, 472 U.S. 372, 105 S.Ct. 2727, 86 L.Ed.2d 300
(1985). In June of 1985, the United States Supreme Court decided Baldwin and held that Alabama's requirement under its 1975 Death Penalty Statute that a jury convicting a defendant of any one of a number of specified aggravated crimes return a "sentence" of death along with its guilty verdict did not render unconstitutional the death sentence imposed by the trial judge after independently considering the defendant's background and character and the circumstances of his crime. In 1981, Alabama's 1975 Death Penalty Act was repealed. § 13A-5-57
(b); Baldwin, 472 U.S. at ___, n. 1, 105 S.Ct. at 2729, n. 1,86 L.Ed.2d at 304, n. 1.
 I
The defendant was tried and convicted under Alabama's 1975 Death Penalty Act prior to its condemnation because of its preclusion clause in Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), and prior to the clause's severance from the Act in Beck v. State, 396 So.2d 645 (Ala. 1980). The arguments that the preclusion clause could not be severed from the remainder of the statute and that the defects in the statute could not be cured by showing a want of prejudice were rejected in Hopper v. Evans, 456 U.S. 605,613-14, 102 S.Ct. 2049, 2054, 72 L.Ed.2d 367, 374-375 (1982), reversing Evans v. Britton, 628 F.2d 400 (5th Cir. 1980), supplemented, rehearing denied, 639 F.2d 221 (5th Cir. 1981).
In order to determine what effect the preclusion clause had on the defendant's conviction and sentence, we are guided by *Page 730 
the test set out in Cook v. State, 431 So.2d 1322 (Ala. 1983):
 "The complete test to determine the effect of the preclusion clause on a pre-Beck trial was set out in Cook v. State, 431 So.2d 1322 (Ala. 1983):
 "`(1) Was there any evidence presented at trial upon which a conviction of a lesser included offense could have been based?
 (2) If not, has the defendant suggested any plausible claim which he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial? If the answer to both of these questions is no, then a conviction at trial is due to be affirmed.'
 "Cook v. State, 431 So.2d at 1324. The first question is taken from Beck v. Alabama, supra. The second one was posed first in Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982)." Ex parte Baldwin, 456 So.2d 129, 133 (Ala. 1984).
See also Bryars v. State, 456 So.2d 1122, 1127 (Ala.Cr.App. 1983), reversed on other grounds, Ex parte Bryars,456 So.2d 1136 (Ala. 1984) ("[A] case tried when the preclusion clause was in effect did not, necessarily, have to be re-tried.");Julius v. State, 455 So.2d 975 (Ala.Cr.App. 1983), affirmed, Exparte Julius, 455 So.2d 984 (Ala. 1984), cert. denied,469 U.S. 1132, 105 S.Ct. 817, 83 L.Ed.2d 809 (1985); Hill v. State,455 So.2d 930, 933-34 (Ala.Cr.App.), affirmed, Ex parte Hill,455 So.2d 938 (Ala.), cert. denied, 469 U.S. 1098, 105 S.Ct. 607,83 L.Ed.2d 716 (1984); Tomlin v. State, 443 So.2d 47
(Ala.Cr.App. 1979), affirmed, Ex parte Tomlin, 443 So.2d 59
(Ala. 1983), cert. denied, 466 U.S. 954, 104 S.Ct. 2160,80 L.Ed.2d 545 (1984). "A defendant convicted under § 13-11-2 of the 1975 statute is entitled to a new trial because of the preclusion clause in the statute if there was evidence introduced at trial which would have warranted a jury instruction on a lesser included offense or if the defendant suggests any plausible claim not contradicted by his own testimony which he might conceivably have made which would have entitled him to a jury instruction on a lesser included offense." Ex parte Tomlin, 443 So.2d at 62. See also Ritter v.Smith, 726 F.2d 1505, 1509-10 (11th Cir. 1984); Ritter v.State, 429 So.2d 928, 935 (Ala. 1983); Richardson v. State,419 So.2d 289, 292-93 (Ala.Cr.App. 1982), cert. denied,460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983); Lane v. State,412 So.2d 292 (Ala. 1982).
The State's evidence proved that, during the course of a robbery in which the defendant was joined by Percy Craig, Roger McQueen, and Reginal Tinsley, the defendant executed Mr. and Mrs. Green at their Western Auto Store in Mount Vernon, Alabama. The defense was alibi. Although the defendant did not testify, defense witness Carl Harrington testified that the defendant was with him at the Ebony Club in Mobile at the time of the robbery-murders.
In applying the "complete test to determine the effect of the preclusion clause" on the defendant's conviction and sentence,Ex parte Baldwin, 456 So.2d at 133, we find no evidence presented at trial upon which a conviction of a lesser included offense could have been based.
 "`A court may properly refuse to charge on lesser included offenses when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense.' Wesley v. State, 424 So.2d 648, 652 (Ala.Crim.App. 1982), Chavers v. State, 361 So.2d 1106 (Ala. 1978). `A defendant is likewise not entitled to charges on lesser included offenses when he denied committing the crime itself.' Williams v. State, 377 So.2d 634, 637 (Ala.Crim.App.), cert. denied, Ex parte Williams, 377 So.2d 639 (Ala. 1979).
 "In Cook v. State, 431 So.2d 1322 at 1325 (Ala. 1983), this Court noted:
 "`[W]hen a defendant takes the witness stand and testifies that, because he was in a distant location when the crime took place, he could not possibly have committed it, he has directly contradicted any evidence which he might *Page 731 
later produce to show that he was guilty of a lesser included offense.'
 "When, as in this instance, the only defense is one of alibi, a defendant is not entitled to instructions on lesser included offenses. Alldredge v. State, 431 So.2d 1358 (Ala.Crim.App. 1983)." Ex parte Curry, 471 So.2d 476, 478 (Ala. 1984).
Here, neither the evidence presented by the State nor that presented by the defense suggested a reasonable theory supporting a charge on a lesser offense. Ex parte Pruitt,457 So.2d 456, 457 (Ala. 1984). "A defendant is not entitled to charges on lesser included offenses where the only reasonable conclusion from the testimony is that he is guilty of the crime charged or no crime at all." Ex parte Kennedy, 472 So.2d 1106,1114 (Ala. 1985).
The defendant has failed to satisfy the second part of the preclusion-clause-effect test by failing to suggest "any plausible claim which he might conceivably have made, had there been no preclusion clause, that is not contradicted by his own testimony at trial." Cook, 431 So.2d at 1324.
The defendant argues that "(t)he main defense in the case at bar was that the State's witnesses who tied Freddie Wright to the offense were completely unworthy of belief." Appellant's Brief filed August 12, 1983, pp. 30-31. Based upon an overly restrictive interpretation of the preclusion clause effect test, it is argued that, since the defendant did not personally testify at trial, his "own testimony" could not contradict anything.
Although the defendant did not personally take the witness stand and testify, his defense was alibi and he presented a witness who testified that he was in Mobile at the time of offense in Mount Vernon. Contrary to the defendant's argument, this alibi defense negates any "plausible claim" that the defendant "could have been with Craig, McQueen, and Tinsley, but not known about nor participated in the murders . . . [and] be guilty of robbery and not murder, or merely felony murder." Appellant's Second Supplemental Brief filed August 14, 1985, p. 11. We cannot accept the argument that, since the defendant did not testify at trial, his "own testimony" does not contradict this claim. To allow such would be to sanction the knowing use of perjured testimony and reduce any atttempt at the truth finding process involved in the trial of a criminal defendant to a farce, mockery, and sham. We must view the testimony of the defendant's witnesses at trial as the defendant's "own testimony" for purposes of applying the preclusion-clause-effect test.
Other defendants, presenting an alibi defense at trial, have attempted to assert a similar plausible claim (that the accomplice did the actual killing) to show that the preclusion clause prejudiced their cause. In Ex parte Tomlin, supra, the accused testified that he was in Texas at the time of the killings in Alabama. Tomlin "argued that, but for the preclusion clause, he might have introduced evidence that Daniels, who was allegedly with Tomlin at the time in question, did the killing, or that Tomlin intentionally killed only one of the victims, or that Tomlin was under the influence of drugs at the time of the killings." Ex parte Tomlin, 443 So.2d at 62. The court found that all of these claims were in conflict with Tomlin's own testimony. "[W]hen a defendant testified that he was in a distant location when the crime was committed, his own testimony directly contradicted any evidence he might have introduced to show that he was guilty of a lesser included offense." Ex parte Tomlin, 443 So.2d at 62. Similar claims have been repeatedly rejected. Ex parte Julius, 455 So.2d at 986-87;Bryars, 456 So.2d at 1127; Hill, 455 So.2d at 933-34. We do not deem it significant that, in this case, unlike those of Tomlin,Cook, Bryars, and Hill, the defendant did not personally testify to his alibi, because here, the defendant did in fact present alibi testimony through one of his witnesses. In Exparte Julius, 455 So.2d at 986, Julius did not testify but his testimony from a prior hearing was read into evidence. Our Supreme Court held that "Julius's reliance solely upon the defense of alibi resulted in his failure to *Page 732 
produce evidence warranting a charge on the lesser included offense of manslaughter in the first degree." Ex parte Julius, 455 So.2d at 987.
The defendant's "plausible claim" that he was present at the crime but only guilty of felony murder or robbery is speculative and directly opposed and contrary to the testimony he presented at trial. There has been no showing that the existence of the preclusion clause prevented him from asserting these "plausible claims" at trial.
The defendant's "plausible claim" is not the type contemplated by the second part of the preclusion-clause-effect test.
 "Petitioner must not only suggest a defense which he might have made, but he must also show that he did not assert the defense because of the preclusion clause. Hopper v. Evans, supra; Ritter v. Smith, 726 F.2d 1505 (11th Cir. 1984), petition for cert. filed, 52 U.S.L.W. 3875 (U.S. May 15, 1984) [cert. denied 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984)]. If we did not require this last showing, petitioner conceivably could assert any defense which has now occurred to him and demand that he be given a new trial at which he may raise a new defense. This could not be what the United States Supreme Court intended in Hopper v. Evans, supra, when it formulated this part of the test. That court was concerned with the effect the preclusion clause had upon the trial, i.e., whether the `brooding omnipresence' of the preclusion clause in any way influenced the defendant's decision on how to defend against a capital charge. The Supreme Court specifically stated that `a defendant might make a plausible claim that he would have employed different trial tactics — for example, that he would have introduced certain evidence or requested certain jury instructions — but for the preclusion clause.' (Emphasis added.) Hopper v. Evans, 456 U.S. at 612-13 n., 102 S.Ct. at 2053-54 n. This should not be construed as an invitation to all defendants tried under the 1975 Death Penalty Act to defend against the capital charge anew before the appellate courts, asserting any new defense not presented at trial, without regard to whether it was one that was considered and discarded because of the preclusion clause." Ex parte Baldwin, 456 So.2d at 135.
Here, as in Ex parte Baldwin, 456 So.2d at 135, we hold that the defendant "was not prejudiced by the existence of the preclusion clause and that he was not entitled to an instruction on a lesser included offense. There was no evidence presented at trial which would have supported a conviction of a lesser included offense, nor has petitioner suggested any plausible claim which he would have made but for the preclusion clause."
 II
The trial judge did not commit reversible error in refusing the defendant's written requested charges numbers five and six. These charges stated that if the evidence convinced the jury that State's witnesses Percy Craig and Roger McQueen were men of bad character and unworthy of belief, the jury could disregard their evidence altogether.
The requested charges are:
 "The court charges the jury, that if the evidence convinces you that Roger McQueen is a man of bad character, and unworthy of belief, then you may disregard his evidence altogether.
 "The court charges the jury that if the evidence convinces you that Percy Craig is a man of bad character, and unworthy of belief, then you may disregard his evidence altogether."
These charges were proper. Ashlock v. State, 367 So.2d 560
(Ala.Cr.App. 1978), cert. denied, 367 So.2d 562 (Ala. 1979). The refusal to give a requested charge on the effect of evidence of bad character requires a reversal where there is evidence of bad character and the charge is not covered in substance by the trial court's oral charge. Ashlock, supra.
The defendant argues that McQueen and Craig, his alleged accomplices, were men of *Page 733 
bad character because they both had been convicted of crimes involving moral turpitude, they both admitted they intended to plead guilty to first degree murder for the killing of Mr. and Mrs. Green, they were the ones who planned to commit a robbery on the day of the crime, and because Craig admitted he perjured himself at the defendant's preliminary hearing.
The Attorney General argues that a conviction of a crime involving moral turpitude does not automatically constitute evidence of bad character. In a special concurrence in Kennedyv. State, 291 Ala. 62, 277 So.2d 878 (1973), Justice Bloodworth was of the opinion that a conviction of a crime of moral turpitude is not per se evidence of bad character. "One may have bad character and never have been convicted of a crime involving moral turpitude. On the other hand, one may have been convicted of a crime involving moral turpitude and yet might be able to produce witnesses who would swear to his good character." Kennedy, 291 Ala. at 66, 277 So.2d at 881.
Even if we were persuaded by this argument, there was additional evidence of the bad character of Craig and McQueen other than the prior convictions. There was evidence that they planned a robbery, that they participated in the murder of Mr. and Mrs. Green, and evidence that Craig perjured himself in his prior testimony.
With regard to the issue under review, the trial court charged the jury that they could disregard the entire testimony of any witness they believed to have willfully sworn falsely to any material fact. The trial court also gave the defendant's requested instructions to the effect that the jury could disregard witness McQueen's testimony if they found that he had willfully and maliciously testified falsely in any material portion of his testimony, that the jury could disregard witness Craig's testimony if they found that he had willfully and maliciously testified falsely in any material portion of his testimony, that the jury could disregard all of the testimony of witnesses Craig and McQueen if they found that these witnesses had willfully and maliciously testified falsely in any material portion of their testimony, and that the jury could consider the fact that a witness has been convicted of a crime involving moral turpitude when deciding what credibility to give the testimony of that witness. The trial court further charged that, if the jury was satisfied from all the evidence that a witness has been proven to be of bad character, they "may look to that fact in saying how much weight you will give to the testimony of such witness." Although a "more emphatic cautionary instruction would have been desirable, . . . we think the trial judge's clear direction that the jury should take into account the witness' character in evaluating [their] credibility was adequate." United States v. Anderson,471 F.2d 201, 204 (5th Cir. 1973).
The defendant's requested charges five and six "were obviously intended to inform the jury that, because of . . . [Craig's and McQueen's] prior convictions, . . . [their] testimony could be disregarded if the jury chose not to believe [them]. To determine if their refusal was probably prejudicial to the defendant, we must examine what other evidence was before the jury, . . ." Kennedy, 291 Ala. at 65,277 So.2d at 880.
The State presented evidence that around 10:30 on the morning of December 1, 1977, Mr. Green had cashed checks in the amount of $900 at a local bank and placed the money in a red bank bag. Shortly before noon, it was discovered that Mr. and Mrs. Green had been tied together and shot in their Western Auto Store in Mount Vernon. The money was missing from the cash register, and a television, a stereo component system, and several watches were also missing from the store. Mr. Green was not wearing the Seiko watch he had been wearing earlier that morning. His family had given him this watch as a birthday present on November 30, 1977.
Doris Lacey Lambert testified that, on the 2nd day of December of 1977, the defendant told her that "he had went out with some of his friends," "Craig, Roger, and `Gill Man,'" to Mount Vernon and that *Page 734 
"he killed two people" with a gun in a Western Auto Store.
On cross examination, Ms. Lambert admitted that she had one child by the defendant but denied making the statement that "before she would see another woman have him she would see him dead" after she learned that the defendant was engaged to another woman. She admitted that she had been convicted of shoplifting.
Roger McQueen testified that he had been convicted of armed robbery and was going to plead guilty to first degree murder for the Mount Vernon killings. He "considered himself a guilty participant in this murder." McQueen stated that he and Craig lived in the same apartment complex in Mobile. On December 1, 1977, they took Craig's car and picked up the defendant and Tinsley. About one week before, at his suggestion, a decision had been made between him and Craig "to rob some store in Jackson." The defendant and Tinsley learned of the plan and agreed to go. On the way to Jackson, they stopped in Mount Vernon to get some tape to repair a torn seat in Craig's car.
McQueen went in the Western Auto Store to purchase the tape. Wright came in later armed with a gun and told Mr. and Mrs. Green to come out from behind the desk into a "little room". The defendant told McQueen "to go to the register" and Tinsley entered the store. McQueen removed the money from the register and Tinsley, at the defendant's direction, got some extension cord to tie up Mr. and Mrs. Green. The defendant and Tinsley then tied up the Greens. The defendant made several trips from the store to Craig's car and took a T.V. set and a stereo system. Tinsley took the watches. The defendant also had Mr. Green's watch. McQueen also testified that Craig told him to "make sure the people were taken care of" because "the people would have identified the car." The defendant was the last one to leave the store. When he returned to Craig's car, the others "asked him what took place and he said that he had took care of both peoples." * * * "He said he had shot both peoples and also Reginald Tinsley agreed with him because he went back into the store the last time." McQueen asked the defendant to show him the empty cartridges if the defendant shot both people and the defendant handed McQueen "two empty cartridge[s] from the gun." The gun was a "nickel plate .38 with some kind of carving handle, a wooden handle." McQueen testified that they left Mount Vernon and went to Craig's sister's house where they divided the money he had taken from the store. The defendant gave the T.V. to Craig and the stereo was taken to where the defendant "stayed at". McQueen left the "bank carrier" that he had taken at Craig's sister's house.
Percy Craig testified that he had been convicted for "possession", forgery, and burglary. He admitted his participation in this offense under review as "the driver" and testified that he intended to plead guilty to a charge of murder. Craig substantially corroborated McQueen's testimony.
Craig testified that, when McQueen returned to the car after having been in the store, either Tinsley or the defendant asked him "how did it look inside." He admitted that he asked his three companions "if everything had been taken care of" because "they were in and out of the store so fast I wanted to be sure that the people were tied up to give me enough time to get away." After they left the store, the defendant gave McQueen "a couple of empty cartridges . . . to throw out of the window." Craig then asked if he shot the people and the defendant said yes. Craig testified that a couple of days after the robbery he saw the defendant with a Seiko watch that was subsequently identified as having been Mr. Green's. Craig said that the defendant gave the watch to Joe Nathan Beckham who pawned the watch.
Other witnesses for the State identified the Seiko watch. It was established that this watch was pawned by Joe N. Beckham at Buster's Eagle Pawn Shop in Mobile on January 16, 1978. *Page 735 
Expert testimony presented by the State established that Mr. and Mrs. Green were both shot once in the head with a .38 caliber bullet and that the bullet recovered from Mr. Green's head could have been fired from a pistol recovered directly behind the defendant's apartment. The bullet that had killed Mrs. Green was too mutilated to compare.
The defendant was arrested at the Stone Oaks Apartment on July 28, 1978. He was living with Hazel Craig, who, when the deputies asked, denied that the defendant was home. The officers searched the apartment and found the defendant in a bedroom. Later, a .38 caliber revolver was recovered on the ground next to an air conditioning unit at the rear of the apartment. Although the ground was damp, apparently from the early morning mist or dew, the gun was "perfectly dry" and "had what appeared to be a fine coating of lint material on the gun itself."
Vicki Craig testified that Hazel Craig was her sister and that she was living with her sister and the defendant in July of 1978 at the Stone Oaks Apartments. She testified that she had seen the defendant with a gun and that, after the police left that morning the defendant was arrested, she saw her sister with the gun. She admitted that she had previously testified that she had hidden the gun because Craig told her he would kill her if she did not hide the gun. She testified that she did not hide the pistol but that she had previously testified that she did because Hazel told her to say that she did.
Mobile County Sheriff's Detective Willie Edward Estes testified that Tinsley had escaped from the county jail. During his investigation of the Greens' murder, he told the defendant that he could definitely put him at the Mount Vernon store at the time the people were killed and that he knew who was with him. The defendant replied, "I don't doubt it." The State then rested its case in chief.
Defense witness Mary Knight testified that she was Ms. Lambert's mother and that her daughter had told her that "she would see Freddie dead before she would see him marry Hazel. He wasn't going to marry anybody." She also testified that she tried to keep her daughter from testifying: "I told her not to come down here and tell a bunch of lies."
Sheriff's Department Identification Officer William Wade testified that he found McQueen's fingerprints on some of the watch boxes found at the scene but did not identify any that belonged to the defendant.
Carl Harrington testified that on the 1st of December of 1977 he saw the defendant in the Ebony Club in Mobile between 10:30 and 11:00. He testified that the next day he and the defendant went to Tallahassee, Florida, together so he could see about obtaining a basketball scholarship to Florida A M. He stated that on December 1, 1977, he was a student at Bishop State Junior College. With his testimony, the defense rested.
On rebuttal, the State proved that Harrington was not enrolled at Bishop State during the fall quarter for 1977 which ended on December 1, 1977. This concluded the evidence presented by both sides.
We find that, under Kennedy, supra, it was error to refuse to instruct the jury that if they found Craig and McQueen men of bad character and unworthy of belief they could disregard their testimony altogether. However, we find that that error was harmless because the jury was charged that they could disregard these witnesses' testimony if they found that they had willfully and maliciously testified falsely in any material respect and that the jury could consider the fact that a witness has been convicted of a crime involving moral turpitude or was of bad character in deciding what credibility to give the testimony of that witness.
Moreover, even if the jury had completely rejected the testimony of both Craig and McQueen, there was other evidence upon which they could have found the defendant guilty beyond a reasonable doubt. Here, the evidence was not so insufficient that a *Page 736 
finding of harmless error was precluded. Johnson v. State,349 So.2d 110 (Ala.Cr.App.), cert. denied, 349 So.2d 113 (Ala. 1977).
In Kennedy, supra, our Supreme Court considered only the weight of the evidence against the accused in its finding of harmless error. While we recognize that under all circumstances corroboration of a witness's testimony does not render harmless the error in failing to give the jury instruction requested in this case, Ex parte Gwin, 425 So.2d 510, 511 (Ala. 1983), here we consider both the strength of the State's case and the other instructions given by the trial court in finding harmless error.
 III
The trial court did not err in refusing to give the defendant's requested charge Number 16, which stated:
 "The court charges you that in order for you to return a verdict of guilty you must unanimously agree on both the question of the guilt of the accused and the fixing of the punishment at death and if any one of you does not agree on both the question of guilt and the punishment of death there can be no verdict of conviction."
In his oral charge, the trial judge instructed the jury that a unanimous verdict was required and that if they found the defendant guilty their verdict would be worded: "We, the Jury, find the Defendant guilty as charged in the indictment and fix his punishment at death by electrocution." The trial court gave the defendant's requested charges to the effect that if any individual juror was not convinced of the defendant's guilt beyond a reasonable doubt, the jury could not convict. The defendant complains because the trial court did not instruct the jury that they had to all agree that the defendant should receive the death penalty.
In qualifying the jury venire on voir dire, the trial court instructed the venire as follows:
 "THE COURT: There are only two possible punishments, two possible verdicts which a jury could return in this case. One would be not guilty. One would be: We, the jury find the defendant guilty as charged in the indictment and fix his punishment at death by electrocution.
 "Does every juror in this room realize that under the Alabama law, capital punishment means death by electrocution? Does every prospective juror realize that if a jury reaches a unanimous verdict in this case, it has only two choices: (a) It may find the defendant guilty, which automatically fixes the punishment at death; or (b) the jury may find the accused not guilty.
"There is no in between. All right."
The trial court then qualified the venire and removed those members who were unalterably opposed to the death penalty and those who could not return a verdict of guilty because that verdict would automatically fix the punishment at death.
The trial judge stated that he refused requested charge Number 16 and a similar charge, Number 14, "because they [the jury] told me that — they told me under their oath if they were satisfied as to his guilt that they would impose the verdict."
Under the 1975 Act before Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), "the jury had to render a guilty verdict accompanied by an automatic verdict of death, or render a verdict of not guilty, or have the judge declare a mistrial if it was unable to reach a verdict." J. Colquitt, TheDeath Penalty Laws of Alabama, 33 Ala.L.Rev. 213, 219 (1982). Under the Act, "[t]he Court may enter a judgment of mistrial upon failure of the jury to agree on a verdict of guilty or not guilty or on the fixing of the penalty of death." Alabama Code 1975, § 13-11-2 (c).
Although the jury could refuse to fix a penalty of death, that option was available only if the jury disregarded their oaths to impose the death penalty if they found the accused guilty. Under the statutory scheme of the 1975 Act, the jury, if it found a defendant guilty, was "mandatorily required to fix the punishment at death." *Page 737 Jacobs v. State, 361 So.2d 640, 643 (Ala. 1978), cert. denied,Jacobs v. Alabama, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83
(1979). The jury was required to return a death sentence if they found the defendant guilty. Baldwin v. Alabama,472 U.S. 372, ___, 105 S.Ct. 2727, 2729, 86 L.Ed.2d 300 (1985). Two of the constitutional defects of this mandatory scheme were "the frequency with which jurors avoid the imposition of mandatory death sentences by disregarding their oaths and refusing to convict," and that "by refusing to convict defendants who the jurors think do not deserve the death penalty, juries exercise unguided and unchecked discretion regarding who will be sentenced to death." Baldwin, 472 U.S. at ___,105 S.Ct. at 2732, 86 L.Ed.2d at 308. Under the 1975 Act, "[t]he jury's function is only to find guilt or innocence." Jacobs v. State,361 So.2d 607, 631 (Ala.Cr.App. 1977), affirmed, 361 So.2d 640
(Ala. 1978), cert. denied, Jacobs v. Alabama, 439 U.S. 1122,99 S.Ct. 1034, 59 L.Ed.2d 83 (1979).
This issue was addressed by the federal district court inEvans v. Britton, 472 F. Supp. 707 (S.D.Ala. 1979), reversed on other grounds, 628 F.2d 400 (5th Cir. 1980), supplemented, rehearing denied, 639 F.2d 221 (5th Cir. 1981), reversed,Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367
(1982):
 "The only problem that the Court ascertains in this area is the practice in state courts in capital cases of not instructing the jury of their right to mistry the case. Since the statute specifically sets forth this possibility, it is probably the better practice that juries be so instructed. However, this Court is not persuaded that the failure to so instruct is constitutionally infirm." Evans v. Britton, 472 F. Supp. at 715, n. 14.
In Bryars v. State, 456 So.2d 1122, 1131-32 (Ala.Cr.App. 1983), reversed on other grounds, Ex parte Bryars,456 So.2d 1136 (Ala. 1984), this Court held that the trial judge's refusal to instruct the jury upon the consequences of a mistrial was proper and that by "instruct[ing] the jury on its paramount duty to weigh the evidence and determine appellant's guilt or innocence, . . . [he] focused the jury's attention where it belonged."
We recognize that in Ex parte Curry, 471 So.2d 476, 479 (Ala. 1984), our Supreme Court held that the failure to charge a jury that their verdict must be unanimous on the issue of guilt or innocence constitutes plain and reversible error. However, we find no error in the trial court's refusal to instruct the jury that their decision to impose the death penalty had to be unanimous. The jury had been instructed prior to trial and during final instructions that a guilty verdict required the death penalty. They had taken an oath that they would follow these instructions. The jury had no discretion in fixing punishment. The legislature had previously determined that certain offenses warranted the death penalty and that a sentence of death automatically and mandatorily attached to a verdict of guilty.
The mistrial provision in the 1975 Act was not a choice offered to the jury, but was a remedy in the event the jury disregarded their oath and refused to impose the death penalty upon finding the defendant guilty. The provision went to the matter of jeopardy and prevented the accused from receiving a life sentence in the event the jury abdicated their sworn duty. We find that the trial judge did not commit error in refusing to instruct the jury that they had the option of disregarding their oaths and refusing to convict because they felt the death penalty was unwarranted.
 IV
The trial court correctly charged the jury that Percy Craig was not an accomplice as a matter of law and that they would have to determine from the facts whether or not Craig was an accomplice.
There is evidence to show that Craig was an accomplice to the same capital robbery and capital murder with which the defendant was charged. However, there is also evidence that Craig was only guilty of the noncapital offenses of felony-murder and *Page 738 
robbery. When asked if he "personally participated in this incident," Craig stated, "Yes, I was the driver." Although Craig testified that he was planning to enter a guilty plea to noncapital murder, his testimony indicates that he had no knowledge that the Greens were going to be killed until after they had been executed and his companions had left the store.
The principles for determining the issue of whether a witness is an accomplice as a matter of law or as a question of fact were set out in Jacks v. State, 364 So.2d 397, 403
(Ala.Cr.App.), cert. denied, Ex parte Jacks, 364 So.2d 406
(Ala. 1978):
 "Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Doss v. State, 220 Ala. 30, 123 So. 231 (1929). However the question of complicity is usually a question of fact; it becomes a question of law only where the court is clearly convinced by a preponderance of the evidence that the witness could have been indicted and convicted of the same charge of a felony for which the defendant is on trial and that the witness freely participated in the crime. Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the trial court. Pryor v. State, 47 Ala. App. 706, 260 So.2d 614 (1972).
 "`The question of law for the court resolves itself into one of undisputed evidence. If this, taken altogether most favorably toward the noncomplicity of the witness, still leaves unchallenged acts which would support a verdict of guilt of the witness, then the court, if requested, must require the State to adduce corroboration.' Leonard [v. State], supra, 43 Ala. App. [454], 464, 192 So.2d [461], 469.
 "Thus where there is doubt or dispute whether a witness is in fact an accomplice, the question is for the jury and not the trial court. Skumro v. State, 234 Ala. 4, 170 So. 776 (1936). Where there is doubt whether a witness is in fact an accomplice, and the testimony is susceptible to different inferences on that point, that question is for the jury. Sweeney v. State, 25 Ala. App. 220, 143 So. 586 (1932); Horn v. State, 15 Ala. App. 213, 72 So. 768 (1916)."
Craig's testimony to the effect that he had no prior knowledge of the murders rendered the question of his complicity one of fact for the jury. Whether this testimony was believable was for the jury. Daniels v. State, 50 Ala. App. 88, 92,277 So.2d 364, 367 (1973). "If a witness admits his participation with the defendant in the crime but seeks by his testimony to explain it and to show his innocent intent, it has been held that a question is presented for the jury." Annot. 19 A.L.R.2d 1352, 1381 (1951). Even where a witness has been jointly indicted with the defendant and convicted before the defendant's trial, if the witness denies his participation at the defendant's trial, the issue of whether he was an accomplice is a question of fact for the jury. Yarber v. State,375 So.2d 1229 (Ala. 1978).
Additionally, the fact that Craig was an admitted accomplice to the robbery does not "require the conclusion as a matter of law that he was an accomplice to the killing of Mr. Green."Tinsley v. State, 395 So.2d 1069, 1078 (Ala.Cr.App. 1980), cert. denied, Ex parte Tinsley, 395 So.2d 1080 (Ala. 1981). That case involved Reginald Tinsley, one of Craig's three companions. There, this Court held that the issue of whether McQueen, who had been previously convicted for murder in the second degree of Mr. Green, was an accomplice to Tinsley in Mr. Green's murder was a question for the jury: "Furthermore, the fact that the witness had `confessed to being involved in the robbery that was involved in this same offense,' does not require the conclusion as a matter of law that he was an accomplice to the killing of Mr. Green, unless the robbery that occurred is so involved in the murder as to make applicable the felony-murder doctrine." Tinsley, 395 So.2d at 1078.
"The classic and usual test to determine whether a witness is an accomplice is whether he could be indicted and convicted *Page 739 
for the particular offense, either as principal or accessory."Jacks, 364 So.2d at 401. In a prosecution for a capital offense, the felony-murder doctrine has no place in securing a conviction of the capital offense charged, § 13A-5-40 (c), and did not at the time of the defendant's trial. Ex parte Ritter,375 So.2d 270, 273-75 (Ala. 1979), (distinguishing felony-murder from accomplice liability), vacated on other grounds, Ritter v. Alabama, 448 U.S. 903, 100 S.Ct. 3044,65 L.Ed.2d 1133 (1980). Felony murder is a lesser crime of robbery-intentional killing. Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980).
Craig's testimony that he participated in the crime is not controlling because "[a] `participant' in a crime is not synonymous with an accomplice." Ex parte Bell, 475 So.2d 609
(Ala. 1985).
 "Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Where there is a doubt or dispute concerning the complicity of a witness and the testimony is susceptible to different inferences on that point, the question is for the jury."
* * * * * *
 "In Yarber v. State, 375 So.2d 1229 (Ala. 1978), the Court held that when a witness denies willing participation in the crime charged against the defendant, the issue of his being an accomplice presents a question of fact for the jury." Ex parte Bell, supra.
A similar situation was presented in Jacks, supra, where Cash, Jacks' companion, admitted his participation in the burglary, but denied any knowledge that Jacks intended to kill anyone. We held: "From the testimony given at trial and Cash's denial of any participation in and prior knowledge of the murder, the question of his complicity in the murder was one for the jury. While there is evidence to show that Cash might have been an accomplice, we cannot define him as such as a matter of law."Jacks, 364 So.2d at 404, (emphasis in original).
 V
The defendant argues that his sentence of death was "disproportionately severe" in view of the fact that his three co-conspirators were convicted of murder in the second degree and Craig was sentenced to 10 years' imprisonment, McQueen to 20 years' imprisonment, and Tinsley to 25 years' imprisonment. Neither Craig, McQueen, nor Tinsley was prosecuted for a capital offense, but was tried for first degree murder under Alabama Code 1975, § 13-1-70.
We find that the defendant's sentence is justified because all the evidence identifies him as the "triggerman" and the individual who actually shot and killed Mr. and Mrs. Green. At the defendant's trial, Craig and McQueen testified that the defendant admitted shooting the Greens. At Tinsley's trial, McQueen testified that after the crime the defendant admitted "he shot both peoples." Tinsley, 395 So.2d at 1076. In Tinsley's trial, the State introduced Tinsley's confession wherein Tinsley stated that "two shots were fired, both by Wright." Tinsley, 395 So.2d at 1070. Apparently, Craig's and McQueen's convictions were not appealed so this Court has no knowledge of the evidence presented there.
The Constitution does not require state appellate courts to compare a defendant's death sentence with sentences imposed in similar cases to determine if the death sentence was proportionate. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871,79 L.Ed.2d 29 (1984). "The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." Williams v. Illinois,399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586, 594 (1970);United States v. Satterfield, 743 F.2d 827, 841 (11th Cir. 1984), cert. denied 471 U.S. 1117, 105 S.Ct. 2362,86 L.Ed.2d 262 (1985). "The Supreme Court has stated that discretionary decisions of state prosecutors to grant immunity to some participants of a crime and not others is not arbitrary or cruel and unusual under the constitution. See Gregg v. Georgia,428 U.S. 153, 199, *Page 740 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976) (Justices Stewart, Powell, and Stevens); Proffitt v. Florida, 428 U.S. [242] at 254, 96 S.Ct. [2960] at 2967 [49 L.Ed.2d 913 (1976)]." Palmesv. Wainwright, 725 F.2d 1511, 1524 (11th Cir.), cert. denied,469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). Such a contention of disproportionality based on a grant of immunity does not present a "cognizable basis for relief." Id.
Although the 1975 Act had no specific requirements of proportionality review, such procedures were required afterBeck v. State, 396 So.2d 645 (Ala. 1981); Colquitt, 33 Ala.L.Rev. at 342. Alabama's present death penalty act specifically provides for proportionality review. Alabama Code 1975, § 13A-5-53 (Supp. 1981).
This Court considered the principles involved in this issue in Williams v. State, 461 So.2d 834, 849 (Ala.Cr.App. 1983), reversed on other grounds, Ex parte Williams, 461 So.2d 852
(Ala. 1984):
 "While Beck, 396 So.2d at 664, obligates this Court to consider the punishment received by alleged accomplices, it does not require or direct that every defendant implicated in a crime receive the same punishment. `There is not a simplistic rule that a co-defendant may not be sentenced to death when another co-defendant receives a lesser sentence. Collins v. State, 243 Ga. 291, 253 S.E.2d 729 (1979). Each case is evaluated on its unique factual circumstance.' McClesky v. State, 245 Ga. 108, 263 S.E.2d 146, 151, cert. denied, 449 U.S. 891, 101 S.Ct. 253, 66 L.Ed.2d 119 (1980). See also Justus v. State, 247 Ga. 276, 276 S.E.2d 242, 245-46, cert. denied, 454 U.S. 882, 102 S.Ct. 366, 70 L.Ed.2d 193
(1981). Citing Lockett v. Ohio, 438 U.S. 586, 602-605, 98 S.Ct. 2954, 2963-65, 57 L.Ed.2d 973
(1978), the Supreme Court of South Carolina has held that while a number of `defendants are equally guilty of the crime of murder . . ., they are not ipso facto
deserving of the same punishment.' State v. Shaw, 273 S.C. 194, 255 S.E.2d 799, 804, cert. denied, 444 U.S. 957, 100 S.Ct. 437, 62 L.Ed.2d 329 (1979).
 "The one fact that the defendant was the `triggerman' is sufficient to distinguish him from the others for purposes of the death penalty. Shaw, 255 S.E.2d at 804. See also Justus, 276 S.E.2d at 245; McClesky, 263 S.E.2d at 151. The fact that the defendant was the actual perpetrator of the crime, the triggerman, is an important and very significant factor to weigh in determining whether the defendant's sentence to death is excessive or disproportionate to the penalty imposed in the cases of his co-defendants, Clark v. Commonwealth, 220 Va. 201, 257 S.E.2d 784, 792-96
(1979), cert. denied, 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980)."
Because of "the need for individualized consideration as a constitutional requirement in imposing the death sentence",Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965,57 L.Ed.2d 973, 990 (1978), the focus must be on the defendant.Enmund v. Florida, 458 U.S. 782, 798, 102 S.Ct. 3368, 3377,73 L.Ed.2d 1140, 1152 (1982); Williams, 461 So.2d at 849-50.
The fact that charges against a co-defendant/accomplice were nol-prossed because of insufficient evidence does not render the defendant's death sentence constitutionally excessive.Womack v. State, 435 So.2d 754, 763 (Ala.Cr.App.), affirmed, Exparte Womack, 435 So.2d 766, 769 (Ala. 1983). See also Ex parteDobard, 435 So.2d 1351, 1357 (Ala. 1983), cert. denied,464 U.S. 745, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984) (In view of evidence that it was defendant who fired fatal shots at police officer and that his culpability was greater than that of his younger female accomplice, imposition of death penalty on defendant was not disproportionate to sentence of accomplice, who received a twenty-year sentence.); Heath v. State,455 So.2d 898, 900-01 (Ala.Cr.App. 1983), affirmed, Ex parte Heath,455 So.2d 905 (Ala. 1984), cert. granted in part,470 U.S. 1026, 105 S.Ct. 1390, 84 L.Ed.2d 780 (Defendant's death sentence is appropriate notwithstanding the fact that the two co-conspirators each received a ten-year sentence.); Dunkins v. *Page 741 State, 437 So.2d 1349, 1356 (Ala.Cr.App.), affirmed, Ex parteDunkins, 437 So.2d 1356 (Ala. 1983), cert. denied,465 U.S. 1051, 104 S.Ct. 1329, 79 L.Ed.2d 724 (1984) (Death penalty upheld even though accomplice pled guilty and received life imprisonment.). Even assuming that a defendant's co-defendants deserved the death sentence would not justify reducing the defendant's death sentence. Ex parte Thomas, 460 So.2d 216,226-27 (Ala. 1984). See also Ex parte Raines, 429 So.2d 1111,1112-13 (Ala. 1982), cert. denied, 460 U.S. 1103,103 S.Ct. 1804, 76 L.Ed.2d 368 (1983).
We find that the defendant's sentence was not "disproportionately severe."
 VI
The trial court properly qualified the jury venire as to their opinions regarding the death penalty because in a capital case, as elsewhere, "the quest is for jurors who will conscientiously apply the law and find the facts. That is what an `impartial' jury consists of, and we do not think, simply because a defendant is being tried for a capital crime, that he is entitled to a legal presumption or standard that allows jurors to be seated who quite likely will be biased in his favor." Wainwright v. Witt, 469 U.S. 412, 423, 105 S.Ct. 844,852, 83 L.Ed.2d 841, 851 (1985). Even though the jury was required by the death penalty act under which the defendant was tried to impose the death penalty if they found the defendant guilty, the State had a "legitimate interest" in obtaining jurors who will follow the instructions of the trial court and who will obey their oaths as jurors. Witt, 469 U.S. at 419-22,105 S.Ct. at 850-51, 83 L.Ed.2d at 849-50. "It is well recognized that the state, in a case in which it has the right to ask for the death penalty, may inquire as to the prospective jurors' attitude respecting the imposition of the death penalty." Annot., 39 A.L.R.3d 550, 553 (1971).
 VII
Arguments have been made that the exclusion of jurors who are unalterably opposed to the death penalty results in juries that are biased in favor of the prosecution and more prone to convict and preclude judgment by a fair cross section of the community. Although the potential validity of this claim has been acknowledged, Rector v. Arkansas, 466 U.S. 988,104 S.Ct. 2370, 80 L.Ed.2d 842 (1984) (Justices Marshall and Brennan), the arguments have been rejected because of insufficient substantiation for the claims. Witherspoon v. Illinois,391 U.S. 510, 517-18, 88 S.Ct. 1770, 1774-75, 20 L.Ed.2d 776, 782
(1968).
A "death qualified" jury does not deprive a defendant of a fair and impartial jury or deprive a defendant of a jury representing a fair cross section of the community. Sonnier v.Maggio, 720 F.2d 401, 407-08 (1983), cert. denied,465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984); McCorquodale v.Balkcom, 705 F.2d 1553, 1556 (11th Cir. 1983), cert. denied,466 U.S. 954, 104 S.Ct. 2161, 80 L.Ed.2d 546 (1984). See alsoClark v. State, 451 So.2d 368, 370 (Ala.Cr.App. 1984); Edwardsv. State, 452 So.2d 487, 493 (Ala.Cr.App. 1982), reversed on other grounds, Ex parte Edwards, 452 So.2d 503 (Ala. 1983);Taylor v. State, 442 So.2d 128, 131 (Ala.Cr.App. 1983);Crawford v. State, 377 So.2d 145, 151 (Ala.Cr.App.), affirmed,Ex parte Crawford, 377 So.2d 159 (Ala. 1979), vacated on other grounds, 448 U.S. 904, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980).
 VIII
The death penalty is not per se cruel and unusual punishment prohibited by the Eighth Amendment. Gregg v. Georgia,428 U.S. 153, 188-95, 96 S.Ct. 2909, 2932-35, 49 L.Ed.2d 859, 883-87
(1976). Death by electrocution is constitutional. Sullivan v.Dugger, 721 F.2d 719, 720 (11th Cir. 1983).
 IX
The defendant argues that the 1975 Death Penalty Act fails in each key stage of the judicial process to comport with the constitutional standards of the *Page 742 
Eighth and Fourteenth Amendments to the Constitution of the United States because: (1) It does not provide for a consideration by the jury in the guilt determining phase of the trial of the aggravating and mitigating circumstances of the capital offense and requires a mandatory finding of death. This contention was answered in Baldwin v. Alabama, 472 U.S. 372, ___, 105 S.Ct. 2727, 2737, 86 L.Ed.2d 300, 314 (1985): "Alabama's requirement that the jury return a `sentence' of death along with its guilty verdict, while unusual, did not render unconstitutional the death sentence the trial judge imposed after independently considering petitioner's background and character and the circumstances of his crime." See alsoBeck v. State, 396 So.2d 645, 659 (Ala. 1980).
(2) Although the preclusion clause of the 1975 Death Penalty Act was unconstitutional, Beck v. Alabama, 447 U.S. 625,100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); Beck v. State,485 So.2d 1207 (Ala. 1985), an instruction on a lesser included offense must be given in a capital case "only when the evidence warrants such an instruction." Hopper v. Evans, 456 U.S. 605,611, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367, 373 (1982) (emphasis in original).
(3) The defendant argues that the statute is unconstitutional because at the sentencing stage the burden is placed on the accused to prove why he should not be sentenced to death. This contention was also answered in Baldwin v. Alabama,472 U.S. 372, ___, 105 S.Ct. 2727, 2736, 86 L.Ed.2d 300, 313 (1985):
 "It does not follow, however, that the judge will be swayed to impose a sentence of death merely because the jury returned a mandatory death `sentence,' when it had no opportunity to consider mitigating circumstances. The judge knows that determination of the appropriate sentence is not within the jury's province, and that the jury does not consider evidence in mitigation in arriving at its `sentence.' The jury's `sentence' means only that the jury found the defendant guilty of a capital crime — that is, that it found the fact of intentional killing in the course of a robbery — and that if the judge finds that the aggravating circumstances outweigh the mitigating circumstances, the judge is authorized to impose a sentence of death. The `sentence' thus conveys nothing more than the verdict of guilty, when it is read in conjunction with the provisions of the 1975 Act making the offense a capital crime, would convey. It defies logic to assume that a judge will be swayed to impose the death penalty by a `sentence' that has so little meaning. Despite its misdescribed label, it is not a sentence of death."
The prosecution must prove any aggravating circumstance beyond a reasonable doubt.
 "The 1975 Act failed to specify which party bore the burden of proof on aggravating circumstances and failed to explain what that burden was. In Beck v. State [396 So.2d 645, 663 (Ala. 1981)], however, the Alabama Supreme Court agreed with the weight of authority and placed the burden on the prosecution to prove any aggravating circumstances beyond a reasonable doubt." Colquitt, 33 Ala.L.Rev. at 310.
The accused's only burden is to go forward with any mitigating circumstances. Cook v. State, 369 So.2d 1251, 1258 (Ala. 1978) (J. Bloodworth concurring); Jacobs v. State, 361 So.2d 640, 647
(Ala. 1978) (C.J. Torbert, concurring in part, dissenting in part), cert. denied, Jacobs v. Alabama, 439 U.S. 1122,99 S.Ct. 1034, 59 L.Ed.2d 83 (1979).
(4) Contrary to the defendant's argument, appellate review of a death sentence under the 1975 Act is constitutionally adequate. Although the 1975 Act contained no specific provisions for proportionality review, the Eighth Amendment to the United States Constitution does not require a state appellate court to compare a defendant's death sentence with sentences imposed in similar cases to determine if the death sentence was proportionate. Pulley v. Harris, 465 U.S. 37,104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Additionally, Beck v. *Page 743 State, 396 So.2d 645, 664 (Ala. 1981), which we apply in reviewing the defendant's appeal requires appellate courts to examine all death sentences in light of the standard and procedure approved in Gregg v. Georgia, 428 U.S. 153,96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and ascertain "whether the crime was in fact one properly punishable by death, whether similar crimes throughout the state are being punished capitally and whether the sentence of death is appropriate in relation to the particular defendant." Beck, 396 So.2d at 664.
Any infirmity in the 1975 Act with regard to appellate review is cured by actually providing the defendant with a proportionality review of his sentence on this appeal of his conviction.
 X
In his sentencing order, required by § 13-11-4, the trial court found the existence of the aggravating circumstance that "[t]he capital felony was especially heinous, atrocious or cruel" as provided in § 13-11-6 (8).
 "The Court finds that the act was especially heinous, atrocious, or cruel in that two law-abiding human beings in the performance of their business of preparing for Christmas sales, who upon being robbed, begged the defendants to take everything they wanted but to spare their lives. Both Warren and Lois Green were tied back to back with an extension cord from their own store, and offering no resistance whatsoever, were each shot in the head, wherein they slowly died in a pool of blood described as several feet in diameter."
In a supplemental letter brief filed on June 6, 1980, the defendant contends that the evidence did not warrant the finding of this aggravating circumstance and that the 1975 Act was unconstitutional under Godfrey v. Georgia, 446 U.S. 420,100 S.Ct. 1759, 64 L.Ed.2d 398 (1980). Godfrey held that the subsection of the Georgia Code which allowed imposition of the death sentence if the offense of murder, rape, armed robbery, or kidnapping "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim" was unconstitutionally vague and allowed the jury uncontrolled discretion as to whether to impose the death penalty. 446 U.S. at 422, 432-34,100 S.Ct. at 1762, 1767, 64 L.Ed.2d at 403, 408-09. However, in Proffitt v.Florida, 428 U.S. 242, 255, 96 S.Ct. 2960, 2968,49 L.Ed.2d 913, 924 (1976), the Court upheld the statutory aggravating factor of "especially heinous, atrocious, or cruel" under Florida's death penalty statute, against an attack that it was unconstitutionally vague, considering the provision as construed by the Florida Supreme Court.
Following Godfrey, our Supreme Court held that the aggravating circumstance that the capital felony was especially heinous, atrocious or cruel "was intended to apply to only those conscienceless or pitiless homicides which are unnecessarily torturous to the victim." Ex parte Kyzer,399 So.2d 330, 334 (Ala. 1981) ("a brutal, savage, barbaric killing" involving the "methodical execution" of three people). See also Ex parte Julius, 455 So.2d 984, 987 (Ala. 1984) (violent and brutal sexual abuse and strangulation of victim), cert. denied, Julius v. Alabama, 469 U.S. 1132, 105 S.Ct. 817,83 L.Ed.2d 809 (1985); Ex parte Tomlin, 443 So.2d 59, 63 (Ala. 1983) (killing planned for over nine months, involved travel with a "hit man" from Texas to Mobile for express purpose of killing one of victims, and involved the killing with a shotgun and pistol of intended victim and his fifteen-year-old companion), cert. denied, Tomlin v. Alabama, 466 U.S. 954,104 S.Ct. 2160, 80 L.Ed.2d 545 (1984). See E. Carnes, Alabama's1981 Capital Punishment Statute, 42 Ala. Lawyer 456, 498-99 (1981).
This Court, as was our Supreme Court in Ex parte Tomlin, 443 So.2d at 63, is "not inclined to rule as a matter of law that the murders were not especially heinous, atrocious or cruel." In Bush v. State, 431 So.2d 555, 560 (Ala.Cr.App. 1982), affirmed, Ex parte Bush, 431 So.2d 563 (1983), cert. *Page 744 
denied, Bush v. Alabama, 464 U.S. 865, 104 S.Ct. 200,78 L.Ed.2d 175 (1983), this Court held:
 "Execution-type slayings evincing a cold, calculated design to kill, fall into the category of heinous, atrocious or cruel. Vaught v. State, 410 So.2d 147
(Fla. 1982); Combs v. State, 403 So.2d 418 (Fla. 1981); Armstrong v. State, 399 So.2d 953 (Fla. 1981); Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). We recognize that an instantaneous death caused by gunfire is not ordinarily a heinous killing. Odom v. State, 403 So.2d 936 (Fla. 1981). However, when a defendant deliberately shoots a victim in the head in a calculated fashion to avoid later identification, after the victim has already been rendered helpless by gunshots to the chest, such `extremely wicked or shockingly evil' actions may be characterized as especially heinous, atrocious, or cruel. Hargrave v. State, 366 So.2d 1, 5 (Fla. 1978)."
In reviewing this Court's opinion in Bush, our Supreme Court stated, "[w]e concur with the appellate court's conclusion that Bush's death sentence was properly arrived at and is appropriate." Ex parte Bush, 431 So.2d at 565.
Here, the evidence supports the trial court's findings that the defendant deliberately killed Mr. and Mrs. Green "in order that they would not be witnesses" and that they "were each shot in the head, wherein they slowly died in a pool of blood."
In sentencing the defendant to death, the trial court found the existence of two aggravating circumstances: (1) that the capital felony was committed while the defendant was engaged in the commission of a robbery, § 13-11-6 (4), and (2) that the offense was especially heinous, atrocious or cruel, § 13-11-6 (8).
The trial court found the existence of some mitigating circumstances. It found as "only slightly applicable" the capacity of the defendant to appreciate the criminality of his conduct, § 13-11-7 (6), because, although there was "no evidence" that the defendant was unable to appreciate the criminality of his conduct, the defendant did have a "low-average I.Q. of 93." The trial court considered that several witnesses testified that the defendant was not a man of personal violent tendencies and was described as a follower rather than a leader. The trial court found that the mitigating circumstance described in § 13-11-7 (1) did not exist because the defendant had a "most significant criminal record."
In the weighing process, the trial court found that the aggravating circumstances "far outweigh" the mitigating circumstances. Even if we exclude from consideration the aggravating circumstance that the offense was especially heinous, atrocious or cruel, we still conclude that the remaining aggravating circumstance far outweighs the mitigating circumstances. Barclay v. Florida, 463 U.S. 939, 958,103 S.Ct. 3418, 3428, 77 L.Ed.2d 1134, 1149 (1983) ("There is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of the improperly considered aggravating circumstances could not possibly affect the balance.").
 XI
In an abundance of caution, this Court reviews the defendant's conviction and sentence under the requirements and provisions of § 13A-5-53 of Alabama's 1981 Death Penalty Act and Beck v. State, 396 So.2d 645, 664 (Ala. 1980).
A review of the record for any error involving the conviction reveals no error which "has or probably has adversely affected the substantial right of the defendant." Rule 45A, A.R.A.P. Review discloses that no "error adversely affecting the rights of the defendant was made in the sentence proceedings," that "the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence," and that "death was the proper sentence in the case." § 13A-5-53
(a). *Page 745 
In determining that the death sentence is proper in this case, this Court makes the following explicit findings as required by § 13A-5-53 (c) and Beck, 396 So.2d at 664. First, the crime for which the defendant was indicted and convicted was properly punishable by death. The defendant was indicted for a robbery-intentional killing, § 13-11-2 (a)(2), and for first degree murder wherein two individuals were intentionally killed, § 13-11-2 (a)(10). Both charges are part of Alabama's 1975 Death Penalty Act. The jury found the defendant "guilty as charged in the indictment."
Second, the record contains no evidence or indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. Instead, the record reflects the commendable efforts of the prosecutor, the defense counsel, and the trial judge in giving the defendant a fair trial.
Third, our independent weighing of the aggravating and mitigating circumstances indicates and compels our conclusion that death was the proper sentence. The execution style slayings were premeditated, deliberate and committed in cold blood. The only reason for the murders was to eradicate the witnesses to the robbery. We consider the weight of the evidence submitted to support the mitigating circumstances so weak and of little significance as to render the mitigating circumstances themselves nonexistent. The passage of time has not diminished the brutality and maliciousness of the defendant's actions.
Fourth, in addition to our findings under Issue V, we further find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. "[A]pproximately two-thirds of the death sentences imposed in this state are for capital offenses involving robbery. Beck v. State,396 So.2d 645, 654, n. 5 (Ala. 1981)." Jones v. State, 450 So.2d 165, 171
(Ala.Cr.App. 1983), affirmed, Ex parte Jones, 450 So.2d 171
(Ala. 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 232,83 L.Ed.2d 160 (1984).See also Ex parte Thomas, 460 So.2d 216, 225
(Ala. 1984); Ex parte Luke, 444 So.2d 400, 401 (Ala. 1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 846
(1984).
The judgment of the circuit court convicting the defendant of the capital offenses charged and the sentence of death are affirmed.
AFFIRMED.
All Judges Concur.